In the Matter of the Application of CHARLES SCHLIVINSKI, by HYMAN SCHLIVINSKI, his Guardian ad Litem, Appellant, for a Peremptory Writ of Mandamus against WILLIAM H. MAXWELL, City Superintendent of Schools of the City of New York, Respondent.

*City superintendent of schools in New York city — his duty to make lists of licensed teachers — separate lists of women and of men and their qualifications — discretionary power of the board of education to select from either list.*

Section 1089 of the revised charter of the city of New York (Laws of 1901, chap. 466, as amd. by chap. 718 of 1901) not only makes the city superintendent of schools the custodian of the lists of the persons to whom teachers' licenses have been issued, but imposes upon him the active duty of preparing such lists.

It is competent for the board of education of said city to pass a resolution providing that there shall be separate lists of the men license holders and of the women license holders, and to prescribe that the qualifications of men applicants for licenses shall be different from the qualifications of women applicants for such licenses, the main difference being that the graduation of a woman applicant from certain high schools or academies is considered equivalent to the graduation of a man from a college or university.

In determining whether more female teachers than male teachers shall be appointed, the board of education should be permitted to exercise its own discretion.

APPEAL by the petitioner, Charles Schlivinski, by Hyman Schlivinski, his guardian ad litem, from an order of the Supreme Court, made at the Kings County Special Term and entered in the office of the clerk of the county of Kings on the 29th day of October, 1902, denying an application for a peremptory writ of mandamus.

*Abram Schlivinski,* for the appellant.

*Ira Leo Bamberger,* for The Brooklyn Teachers, etc., in support of appeal.

*Walter Shaw Brewster* [*James McKeen* with him on the brief], for the respondent.

GOODRICH, P. J.:

The applicant asks for a peremptory writ of mandamus compelling the superintendent of schools of the city of New York "to make and file in his office one complete list of all persons to whom ' Teacher's License No. 1 or Grade B' has been issued * * * and to place thereon the names of both men and women to whom said license has been issued, according to their respective ratings * * * and to place thereon the name of the relator herein in its proper place." The court denied the motion and the applicant appeals.

The respondent contends that the applicant's remedy, if he has any, is against the board of examiners instead of the city superintendent. We think not. Section 1089 of the revised charter of the city (Laws of 1901, chap. 466, as amd. by Laws of 1901, chap. 718) provides that the board of examiners shall examine all applicants and issue to those who pass the required tests the proper licenses, and that the names of those who are licensed "shall be entered by the city superintendent upon lists to be filed in his office." This not only makes the city superintendent the custodian of the lists, but imposes upon him the active duty which the applicant seeks to enforce.

Section 1089 of the revised charter (as amd. by Laws of 1901, chap. 718) provides that " the board of education * * * shall designate * * * the kinds or grades of licenses to teach which may or shall be used * * * together with the academic and professional qualifications required for each kind or grade of license. * * * The names of those to whom licenses have been granted * * * shall be entered by the city superintendent upon lists to be filed in his office, a separate list being made for each grade or kind of license for which the board of education shall by its by-laws make provision."

In pursuance of section 1089, as amended, and under the power to make by-laws conferred by section 1068, the board passed

by-law 75, " The following licenses shall be issued for service in the public schools  *  *  *  Teacher's License No. 1."

In June, 1902, the applicant passed an examination to qualify him to hold license No. 1, and his name was put on a list of that character.  But there were two lists, one for men and the other for women.  The applicant contends that there should be only one list for both men and women, upon which the names of all persons holding license No. 1 should be entered according to their respective ratings, and irrespective of sex, and that the result of the two lists has been that women have been appointed as teachers in advance of men of the same rating.  As early as November, 1898, the board of education had passed a resolution, " There shall be a separate list of men teachers and a separate list of women teachers for each borough," and the board, in its by-laws, in June, 1902, provided that the qualifications of applicants for license No. 1 for men should be different from the qualifications for applicants for such licenses for women.  One of the differences, and perhaps the main difference, is that in the case of women graduation from certain high schools or academies is considered as tantamount to graduation for men from colleges or universities.  This difference is based on the ordinary method of education and preparation of men and women for the duties of teachers.  The salaries of male and female teachers differ, men receiving a larger salary than women.  The policy of the board from the beginning of the school system has been to appoint a much greater proportion of women than men.  Under these conditions the use of separate lists for men and women is not inconsistent with the charter provisions and is correct.

It is true that section 1068 of the revised charter provides that " until the board of education shall act under the provisions of this section the by-laws  *  *  *  in force on the first day of January, nineteen hundred and two, shall remain in full force and effect so far as they are not inconsistent with the provisions of this act and are applicable."

The resolution already referred to is not a by-law and is not inconsistent with any by-law or with the provisions of the revised charter.  While the by-laws of 1902 do not contain the exact language of the resolution of November, 1898, which provided for separate lists for men and women, above referred to, the by-law of June,

1902, which provided for different qualifications of men and women applicants, is equivalent to the previous resolution and was evidently intended to carry into effect the same system that was provided by the resolution and the by-laws of 1898, and there is no inconsistency with the revised charter. The appointment of more female teachers than male teachers is certainly in the interest of an economical administration of the duties of the board and seems to be a matter in which the board should be allowed to exercise its own discretion.

The order was correct and should be affirmed.

WOODWARD, HIRSCHBERG, JENKS and HOOKER, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.