AMERICAN BUILDING AND SAVINGS ASSOCIATION v. J. K. DAUGHERTY AND WIFE.

Decided December 19, 1901.

**1.—Usury—Contract with Building and Loan Association.**

See contract with a building association, including a subscription for stock therein, application for a loan, execution of note therefor, with deed of trust and mechanic's lien to secure same, and monthly payments on the stock, etc., held to be one entire transaction and a scheme to cover usury.

**2.—Same—Lien Rendered Invalid.**

The execution of the building contract giving a mechanic's lien and its assignment to the association being parts of a single transaction designed to secure a loan which was usurious, the association was not entitled to enforce such lien, although itself bearing interest at a lawful rate.

**3.—Same—Mechanic's Lien on Homestead—Attorney Fees.**

A mechanic's lien on the homestead executed by the husband and wife for improvements thereon can not be made to include and fix on such property a valid lien to secure an attorney fee of 10 per cent of the amount stipulated as the value of the work and material in case such amount be collected by law.

**4.—Same—Withdrawal Value of Stock.**

Where a subscription for stock in a building association with provision for monthly payments thereon is but part of a scheme to cover usury in a loan to the subscriber, he is entitled to have the full amount of such monthly payments, and not their withdrawal value only, credited on the principal of the loan, there being in such case no bona fide subscription for the stock.

**5.—Same—Double Recovery for Usury—Penalty Credited on Principal.**

One who pays interest on a building and loan contract tainted with usury is entitled to recover double the amount of all interest actually paid, although the first payments were not themselves usurious, and also to have the entire penalty given by the statute for usury (double recovery of the interest paid) credited on the principal of the debt. Rev. Stats., art. 3106.

ror from Harris. Tried below before Hon. Jno. G. Tod.

*Watkins & Jones,* for plaintiff in error.

*C. L. Bradley,* for defendant in error.

GARRETT, CHIEF JUSTICE.—J. K. Daugherty brought suit against the American Mutual Building and Savings Association and W. J. Alder to cancel certain liens against his homestead which were created by himself and wife in order to borrow $600 from the association with which to build the dwelling house thereon. The petition set out the note executed for the money and a deed of trust executed by the plaintiff and his wife upon the property to W. J. Alder, as trustee, to secure the note and a contract for a mechanic's lien for said sum which had been executed by the plaintiff and his wife with one A. W. Underwood and for which the note had been executed and which had been assigned to the association. It alleged usury in the transaction, and the payment thereon of certain sums of money in accordance with the terms of the contract as principal and interest amounting to more than the principal

of the note, and asked that double the amount of all sums paid as interest be applied to the principal, and for the cancellation of the deed of trust and mechanic's lien, and for judgment over against the association for an excess to which he averred he was entitled.

The defendant association after answering generally, pleaded over in reconvention, and elected to recover upon the mechanic's lien which it averred had been assigned to it, and admitting the payment of $120 as interest, and that Daugherty owned fourteen shares of stock of the association of the value of $348, for which credit was conceded and prayed for judgment and foreclosure of lien for the balance. L. M. Daugherty, the wife of the plaintiff, was joined with her husband as defendant to the plea in reconvention. The cause was tried without a jury, and the court found that the transaction was usurious, and after crediting all payments upon the principal of the debt but refusing credit for double the interest paid, rendered judgment in favor of the association upon its cross-action against Daugherty for the sum of $124.74, as the balance of principal of the debt, including attorney fees, with 6 per cent interest on that amount from date of judgment, with decree of foreclosure against said Daugherty and his wife upon the lots described in the pleadings and the several instruments set out.

The American Mutual Building and Savings Association is a foreign corporation, its domicile being in Chattanooga, Tenn., with a permit to do busines in the State of Texas. W. J. Alder is the secretary of said association, and W. Walker, its agent in Houston, Texas. A short time prior to June 23, 1896, Walker, the agent of the association, approached Daugherty and offered in behalf of the association to lend him the money to build a home on the lots described in the petition, if he desired to do so. Plaintiff agreed to borrow $600 at 6 per cent interest, with security on the lots, to be repaid in monthly installments, and made an application for the loan, dated June 23, 1896. Walker told him that in order to get the money he would have to enter into a contract for the building with a person who would transfer the contract to the association, and suggested A. W. Underwood as an acceptable contractor. On July 21, 1896, the plaintiff, joined by his wife, entered into a contract with Underwood for the erection of the house on lot 8, to be completed by August 15, 1896, for which he agreed to pay him the sum of $600, with interest at the rate of 10 per cent per annum from the date of the completion of the improvements, with 10 per cent attorney fees in case of suit to enforce the payment, and a mechanic's and a materialman's lien was given upon the lot in favor of Underwood to secure the payment of the money. There were other stipulations in the contract requiring Daugherty to keep the property insured for the benefit of Underwood, and to pay all taxes and other charges until the debt should be paid.

The money for the payment of this contract was to be furnished by the asociation, and was to be repaid in monthly payments, with 6 per cent interest. The house was built in acordance with the contract, and

the contractor was paid by the association by three checks dated October 27, 1896, in favor of A. W. Underwood, drawn on Citizens Loan and Trust Company of Chattanooga, Tenn., and stamped paid November 4 and November 5. And October 31, 1896, Underwood assigned the building contract to the association. Plaintiff testified that the agent Walker told him that the loan would draw interest at 6 per cent, payable in monthly installments of $3, and that the loan itself was payable in monthly installments of $8.40. The witness did not understand that he was a stockholder. He testified that he and his wife signed a number of papers, all at the direction of the agent, for the single purpose of securing a loan for $600, which he understood he was to have the privilege of paying in monthly installments as above stated.

The application for the loan was made to the association. In it the plaintiff stated that, as stockholder and member of the association holding twelve shares of stock, he desired to obtain a loan of $600, payable only when the series of stock matured, and agreed to furnish security on lot 8 of the lots described, and he guaranteed that he would build thereon certain improvements set forth, for which purpose the loan was applied for. For said loan he agreed to sell and assign his shares of stock to become the absolute property of the association at maturity thereof and which when matured should be in full satisfaction of said loan. He agreed to pay 6 per cent interest on the sum borrowed, and monthly dues on the shares of stock sold to the association, as well as on two other shares which were called free shares, until they had matured in accordance with the by-laws, rules, and regulations of the association, and waived the right of withdrawal before maturity of his two free shares, and in case of default in the payment of interest and dues the free shares were also assigned, and the officers of the association were authorized to apply the amount due on them to the payment of interest on the money borrowed and to the payment of dues and fines on the stock sold and assigned to the asociation. He also agreed to execute a deed of trust upon the property improved. The application was granted by the association, and on November 7, 1896, the note and deed of trust were executed. The deed of trust conveyed the property to the defendant W. J. Alder, as trustee, in trust for the security of the loan, but recited that the original promissory note and mechanic's lien on the property were continued in full force and effect, and the holder of the note set out in the deed of trust might at his option enforce either or both of them. The note executed by the plaintiff and his wife is as follows:

"Note, Texas Form. $600. Houston, Texas. On maturity of the shares of stock herein mentioned, for value received, I, we, or either of us, promise to pay to the American Mutual Building and Savings Association, of Chattanooga, in the State of Tennessee, in United States gold coin of present standard, six hundred dollars, with interest at the rate of 6 per cent per annum from date, payable monthly on the last Saturday of each and every month, commencing on the last Saturday

of November, 1896, and if this note is collected by suit, we agree to pay an additional 10 per cent on the cash amount to be collected for attorney's fees, and which 10 per cent shall also be secured by deed of trust executed to secure this note. This note is for money borrowed on land, and is secured by a deed of trust of even date herewith, made, executed, and delivered by us to W. J. Alder, trustee, conveying certain real estate situated in the county of Harris, in the State of Texas, in trust to secure its punctual payment, and providing for the sale of said real estate in case of default. Furthermore, in order to provide for the final settlement of this note, we have this day sold to said association twelve shares of stock of the fifty-ninth series of said association, in consideration of the final satisfaction of this note at maturity, but we agree in consideration of this contract to continue the regular monthly payments on said shares of stock until they become fully paid up and of the value of $100 per share; we also agree to continue the payments on the two free shares which we hold until they mature. Now if we pay promptly the interest on said sum of $600, and the monthly installments on all of said shares of stock, amounting in all to $11.40 per month, and any fines assessed under the rules of said association, and the taxes accruing on the said real estate described in the deed of trust securing this obligation and the premium necessary to keep said property insured in such sum as said association may require (not exceeding $600), and shall keep the buildings on said lot in good repair, and the policy of insurance in such company as said association may require, and duly assigned to said association until the stock becomes fully paid in and of the value of $100 per share, then it is understood that this note shall be deemed fully paid and canceled, and the association will pay in cash to said J. K. Daugherty for the surrender of the two free shares of stock the par value thereof, which is $200. But if we fail to pay promptly when due and payable said taxes and insurance premiums, or make default in the payment of said monthly interest, fines, and monthly payments of said stock for a period of six months after the same are due, or any installment thereof is due, or fail to keep the building in good repair, or in any way shall violate the terms of the agreement, then, at the option of the said association, the whole indebtedness evidenced by this obligation (including any taxes and insurance premiums due or paid by said association) shall at once become due and collectible, and a sale under said deed of trust, in the manner therein provided, or a foreclosure thereof, may be had. It is further understood that this obligation is not payable in whole or in part until the final maturity of said shares, and in consideration of such an agreement on the part of the maker hereof, the American Mutual Building and Savings Association binds and obligates itself not to collect or demand in excess of ninety-six monthly payments of dues and of interest on said loan. It is further understood and agreed, however, that if repayment before maturity is necessary from foreclosure, or causes originating from action of said

borrower, that the by-laws of said association that may be in force at that time shall define the method of procedure and the amount to be paid. It is further distinctly understood that the twelve shares of stock sold and transferred by virtue of this contract become the absolute property of the said asociation, and in no case shall the said J. K. Daugherty have any right in law or equity to repurchase said stock or any part thereof, and the said J. K. Daugherty does hereby waive all claim to the same. Furthermore, if we fail to pay the interest on said loan and the dues specified on the stock sold to said association, then we hereby authorize said association to apply the money paid on our free shares to the payment of the loan as far as it will go.

"Witness our hands this 7th day of November, 1896.

(Signed)        "J. K. Daugherty,<br>"L. M. Daugherty.

"Witness:   Norman G. Kittrell, Jr."

On the same date that the note and deed of trust were executed the plaintiff and his wife also joined in the execution of an instrument confirming the mechanic's lien, and correcting it so as to show that it was intended to include both lots 7 and 8, and that omission of lot 7 therefrom was a mistake. A certificate of stock was put in evidence by the association, dated July 1, 1896, for fourteen shares of stock in class A, monthly payment $8.40, reciting that J. K. Daugherty was a member of the association and the owner and holder of fourteen shares of installment stock therein, and containing a provision that the stock was issued and accepted upon the express terms and conditions contained in the laws of the association. On the back thereof there was a written assignment of the stock signed by Daugherty and his wife, dated November 7, 1896, by which, as recited therein, it was sold, transferred and assigned to the association for value received. Daugherty testified that he never saw the certificate for stock until it was shown to him on the trial. He admitted his signature to the assignment, but said he had never had possession or control of the paper before, except when he signed his name on the back of it, and then only saw that side of it. Article 7, section 1, of the by-laws of the association reads as follows: "Class A, Loan and Investment Shares. The monthly payments on each share of stock in class A shall be 60 cents per share for each and every month for ninety-six months, unless the stock sooner matures, commencing on the date of application. At the expiration of ninety-six months no further payments shall be required, and the holders of investment stock in class A shall be entitled to a settlement at the full value of the stock as shown by the books of the association. Loans of the association may be made on this class of stock."

Other by-laws put in evidence by the defendant are not deemed material. The plaintiff had a pass-book as prescribed by the by-laws, which was given to him by the agent Walker, and in which all payments made by him had been credited. This book showed payments commencing

July 1, 1896, and ending April 28, 1900, to the amount of $117 interest, and $396.60 as monthly payments. W. J. Alder, the secretary of the association, testified that the withdrawal value of the stock at the time of the trial was $348.42.

The trial court found that all of the transactions, including the subscription for the stock, the application for the loan, the execution of the note and deed of trust, assignment of the shares, and the execution of the contract for building by which the mechanic's and materialman's lien was given, was one entire transaction for the procuring and securing the loan, and that the provision for monthly payments on stock and the entire scheme of payment was a scheme to cover usurious interest exacted by the association for the use of the money loaned. The evidence supports this conclusion of the trial court, and it is approved and adopted by this court. Although fourteen shares of stock were nominally subscribed for, and there was a guarantee that they should mature with ninety-six payments, there was an absolute transfer of the stock, and a stipulation that the loan should be canceled only by the maturity thereof. There was no probability that the stock would be matured short of the ninety-six payments, for that was only about 57 per cent of the face value with eight years for accumulation, but it will be observed that the sum of the installments would amount to $806.40, and subtracting the $200 for the two free shares, would leave $606.40, for which sum paid in monthly installments from the inception of the transaction and four months prior to the actual advance of the money, the principal sum upon which 6 per cent interest had been paid from the date of the note, the note would be canceled. Ordinarily in loan associations of this character the loan is for the face value of the stock to be canceled by the matured stock, but in this transaction it was for only half the face value of the stock, to be canceled only by the matured stock. When it is shown to have been a loan of money and not a subscription for the stock of the association, and the monthly payments are credited upon the principal of the loan, as they should be, the transaction becomes clearly usurious. Payment of interest on the full sum of $600, at the rate of 6 per cent per annum, becomes more than 10 per cent, and usurious after $240 of the monthly installments have been paid. If payment had been completed as contracted for in eight years, the association would have received for the loan of the $600 the principal with 6 per cent interest on the entire amount, while it was receiving the principal continuously in monthly installments of $8.40, and reaping the benefits of all accumulations thereon. A balder proposition disclosing usury could hardly be stated.

The appellant in effect admits that the transaction is indefensible as usurious, but claims that it was made for the purpose of extending and securing payment of the mechanic's and materialman's lien which had been asigned to it and bears legal interest, and that it should be allowed to recover upon the Underwood contract. If this contention were true as to the fact, it would be correct in law. Krause v. Pope, 78

Texas, 484; Cousin v. Grey, 60 Texas, 346; Nesbit v. Goodrich, 60 S. W. Rep., 1017. But since the mechanic's lien was only a part of one entire transaction, and was adopted only as one form of security for the same debt, the principle invoked is not applicable. The attorney fees should not have been adjudged a lien upon the homestead. Harn v. Association, 3 Texas Ct. Rep., 334. The evidence showed that Walker was the agent of the association for the purpose of negotiating and making the loan, as well as its general agent for the transaction of its business in Houston, and it will be bound by his representations, especially so since it appears from the transaction as committed to writing that the association made the contract as he represented it to be, although it was attempted to be concealed by giving a specious appearance of a loan upon stock subscribed for and issued in good faith. Usury having been shown in the contract, Daugherty was entitled to have all payments of interest credited upon the principal of the debt. He is also entitled to have the full amount of the monthly payments credited, and not the withdrawal value thereof only. As the transaction has been shown to be a scheme to cover usury in a loan of money, and not a bona fide subscription for stock, the payments are monthly payments upon the principal, and not stock dues, and appellees had no stock to have a withdrawal value, and the court having found the transaction to be as stated, was correct in applying the full amount of the monthly payments to the principal of the loan. Appellant's fourth assignment of error and the propositions thereunder are made upon the assumption as a fact that the payments were made upon bona fide stock subscriptions.

Appellee by a cross-assignment of error complains of the action of the court below in refusing to allow him credit upon his note for double the amount of the interest paid by him as the penalty fixed by statute for usurious interest. Rev. Stats., art. 3106. Usury must be actually paid before a cause of action can be maintained for its recovery. Webb on Usury, sec. 466; Stout v. Bank, 69 Texas, 389, 390. Some of the authorities hold that the penalty applies only to the excess above legal interest, but these are usually upon the construction of the statute giving the penalty. The statute of this State has been construed in the case of Smith v. Chilton, 90 Texas, 447, and it was held that the person paying usurious interest might recover double the amount of the entire interest. In the case now under consideration the first payments of interest were not themselves usurious, but the contract as an entirety being a contract for usurious interest, the taint of usury will run to all the interest, and a double recovery should be allowed for all interest actually paid. A part of the interest was paid more than two years before the suit was filed, but limitation to a double recovery was not pleaded. It has also been held, where the statute gives a remedy for the penalty, that it should be strictly followed, from which it would appear that a separate action should be brought therefor and it could not be set off against the debt. Webb on Usury, supra; also sec. 523. Under the statute of this State as it existed before 1892, which is the present law, only

the amount of usurious interest actually paid was recoverable, but it was the penalty for taking usury, and the courts uniformly held that all interest, when usury was shown, should be applied as credits upon the principal. Bank v. Smith, 9 Texas Civ. App., 540; which see for citation of authorities. The appellee having brought his suit to have the contract declared usurious and to cancel the instruments forming it, was entitled to recover the penalty given by the statute and have it applied to his debt, and it appearing that if double the sum of $117 had been so applied, the debt would have been extinguished, leaving a balance in his favor of $2.60, the judgment of the court below will be reversed on his cross-appeal, and judgment here rendered in his favor for said amount and all costs, and the cancellation of the note, deed of trust, and mechanic's and materialmen's lien as prayed for in his petition.

*Reversed and rendered.*