(69 Misc. Rep. 78.)

FITZPATRICK v. BOARD OF EDUCATION OF CITY OF NEW YORK et al.

(Supreme Court, Special Term, New York County. September, 1910.)

1. SCHOOLS AND SCHOOL DISTRICTS (§ 133*)—CIVIL SERVICE—BOARD OF EDUCATION—DISCRETION IN HIRING TEACHERS.

The board of education of the city of New York may cause separate lists of men and women teachers on the eligible lists to be prepared for use in the exercise of its discretionary power in the appointment to a given position of either a male or a female teacher, and the board has

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a wide discretion in determining whether a given position shall be filled by a man or woman.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 133.*]

2. SCHOOLS AND SCHOOL DISTRICTS (§ 133*)—CIVIL SERVICE—SCHOOL TEACHERS—DISCRIMINATION BETWEEN MALES AND FEMALES.

Female school teachers holding grade A licenses being on the eligible lists are subject to the general rules and regulations applicable to all the others on the eligible lists, and, where such lists are subdivided by separating the male and female teachers, a female teacher holding a grade A license cannot complain of the appointment of a male teacher holding a "graduating class" license which was a lower grade license, where all the male holders of grade A licenses were unavailable, when in the judgment of the board of education the welfare of the service required the appointment of a man teacher.

[Ed. Note.—For other cases, see Schools and School Districts, Dec. Dig. § 133.*]

Action by Mary F. Fitzpatrick against the Board of Education of the City of New York and others. On motion to dismiss complaint. Complaint dismissed on the merits.

See, also, 67 Misc. Rep. 564, 124 N. Y. Supp. 765.

H. K. Hoy, for plaintiff.
Archibald R. Watson, for defendants.

GREENBAUM, J. The plaintiff, the holder of a grade A license, issued to her about 20 years ago by the then superintendent of public instruction of the former city of Brooklyn, seeks to enjoin the defendants from appointing one David Goldwasser to the position of teacher of the new 8 B grade or graduating class in public school No. 43, in the borough of Brooklyn, and from appointing any person not the holder of a grade A license.

For the past 15 years plaintiff has been a teacher of boys' classes in grade 7 B of public school No. 43, and her efficiency is not disputed. The board of superintendents of the schools of New York City recommended the appointment of Goldwasser to the position above referred to and the committee on elementary schools reported favorably to the board of education upon this nomination. The proposed appointee has been a school teacher in the borough of Manhattan for a period of six years, and was the holder of what is known as a "graduating class" license, but was not the holder of the grade A license.

Section 1089 of the revised charter of the city of New York (Laws 1901, c. 466) provides for the preparation of eligible lists, as the result of competitive examinations, and also provides that the board of education, upon the recommendation of the board of superintendents, shall designate the kinds or grades of licenses to teach, together with the academic or professional qualifications required for each kind or grade of license. In 1902 the board of education, by virtue of the power vested in that body, established, among other kinds of licenses, the "graduating class" license, and since that date it is the only kind of license for a graduating class that has been issued. The grade

A license existed prior to the consolidation into the Greater New York in 1898.

The Appellate Division, in the case of the Brooklyn Teachers' Association, 85 App. Div. 47, 83 N. Y. Supp. 1, held that under section 1101 of the revised charter holders of a grade A license were exempted from the examination required of other applicants who sought to be placed on the eligible list, and were entitled to be enrolled on this list by virtue of their holding a grade A license. The conclusion of the court was based upon its construction of section 1101 of the revised charter, which in part reads as follows:

"All licenses to teach or certificates of qualifications for teaching granted by the superintendent of public instruction of the city of Brooklyn or by authority of the board of education of said city of Brooklyn prior to February 1, 1898, or recognized by the board of education of said city of Brooklyn or the state superintendent of public instruction as in force at that date in said city shall, unless revoked for cause by the state superintendent of public instruction, be recognized by the city superintendent of schools and the board of examiners of the city of New York, as in full force, and shall entitle the holders to appointment or promotion to any position to which they were respectively eligible by the possession of such licenses or certificates."

As a consequence of this decision the city superintendent caused two separate lists of holders of grade A licenses to be prepared, the one of men and the other of women, in the chronological order of the date of issuance of the licenses, inasmuch as no ratings had been kept of the licensees.

At the time of the nomination of Goldwasser there were but four names remaining on the list of male holders of grade A licenses, and, as these four had either waived their right to promotion or had been appointed to other positions, the next available list of male teachers eligible for appointment as teachers of a graduating class was that containing the names of male holders of graduating class licenses.

It is at this point that the opposing contentions of the parties may be appropriately stated. The plaintiff claims that the defendants have not the power to appoint a male teacher for the vacant position, in view of the fact that the only four male teachers holding grade A licenses on the eligible list were not available, and that under existing conditions the appointment only can be made from the eligible list of female holders of grade A licenses. This claim is resisted by defendants, who urge that they have the right to select a man for the position in question in preference to a woman in the exercise of their judgment.

The evidence shows that school No. 43 is for boys exclusively. The superintendent decided that the interests of the graduating class of school No. 43 would best be served by the appointment of a male teacher for the vacant position. The eligible list required by law, as already stated, consisted of separate lists for men and women, and such a division has been held to be justified. On November 23, 1898, the board of education adopted the following resolution:

"Resolved, That lists of persons to whom licenses to teach in elementary schools are granted and who are eligible to appointment therein shall be compiled in the following manner: 1. There shall be a separate list of men teachers and a separate list of women teachers in each borough."

In Schlivinski v. Maxwell, 80 App. Div. 313, 80 N. Y. Supp. 726, it was expressly held that the board of education had the right to cause separate lists of men and women to be prepared for use in the exercise of its discretionary power in the appointment to a given position of either a male or a female teacher, as the case may be. In the Schlivinski Case it was a male teacher, who claimed that males and females should be treated alike on the eligible lists and that appointments should be made in the order of standing, irrespective of the sex of the holders of licenses. Section 1091 of the revised charter provides different salaries for men and women, and, under the provisions of section 1089 of the charter, the board of education established higher qualifications for men than for women with respect to what is known as license No. 1. The Schlivinski Case recognized that the Legislature intended to confer upon the board of education a wide discretion in determining whether a given position should be filled by a man or woman, not only in the interest of economy when in its judgment the services of a woman would be as effective as those of a man, but in the interest of the pupils when it was deemed peculiarly fitting and desirable to utilize men in preference to women or vice versa. The exercise of this discretionary power does not interfere with the relative standing of the women on the eligible list holding grade A licenses, nor does it ignore the exemption provided in section 1101 of the charter, that licenses issued to Brooklyn teachers prior to February 1, 1898, shall be recognized "as in full force and shall entitle the holders to appointment or promotion to any position to which they were respectively eligible by the possession of such licenses or certificates."

Prior to February 1, 1902, the date when the revised charter went into effect, it was provided inter alia (Laws of 1897, c. 378) that:

"The nominations thus provided for must be made from the list of properly certified principals and teachers and other persons eligible for service in the schools of the borough in the positions to be filled." Section 1103.

Under that section nominations for teaching positions were made indiscriminately, regardless of the order of standing of candidates, and it was to do away with the mischief that might result from this method of appointment that section 1090 of the charter was adopted, which in part provides:

"The nomination provided for above must be made from the list of properly certified principals and teachers and other persons eligible for service in the positions to be filled in the regular order of standing of the candidates on said list, provided, however, that the board of superintendents may consider for each appointment the three persons whose names are highest on the appropriate eligible list. Existing eligible lists in the city of New York and the relative standing of persons whose names are on said lists shall not be affected by the passage of this act."

The holders of grade A licenses were exempted from competitive examinations, and inasmuch as their ratings had not been kept, the eligible list, so far as it related to these licenses, was under the order of the court, as previously indicated, prepared in the chronological order of the issuance of the licenses.

The status quo of grade A licenses is fully preserved and protected, but, being on the eligible list, assuredly they must be subject to the

general rules and regulations applicable to all the others on the eligible lists. To hold that as long as there are names of female teachers on the eligible list holding grade A licenses the board of education is powerless to appoint a man in preference to a woman for a given position when in its judgment the welfare of the service requires such an appointment would result in nullifying the power vested by law in the board to select men over women, despite the fact that it deemed the best interests of the service required the appointment of a male teacher rather than a female.

The argument of the plaintiff that if the contention of plaintiff be not upheld the board of education could ignore the lists of holders of grade A licenses is to my mind fallacious. It presupposes that the board of education intends to do a wrongful act, a presumption that may not be indulged in, and it ignores the fact that the entire number of men on the eligible list for a graduation class does not exceed 175, while the women on the list exceed 600, and the further fact that the number of women appointed as teachers largely exceeds that of men.

As to the point that the defendants have failed to prove that the eligible lists put in evidence were the lists required by law, I am of opinion that prima facie the legality of these lists must be presumed. The complaint must be dismissed on the merits.

Complaint dismissed.