### DICKINSON v. SHELDON.

(Supreme Court, Appellate Division, Fourth Department. July 11, 1911.)

CONTRACTS (§ 294*)—"SUBSTANTIAL PERFORMANCE"—ILLUSTRATING ADVERTISING CATALOGUES.

"Substantial performance" of a contract is performance, except as to unsubstantial omissions, with compensation therefor, and, when the omissions are slight and unintentional, compensation is substituted pro tanto for performance to prevent the hardship of a failure to recover for that which was well done, and, while the rule may be applicable to a contract to print and furnish illustrated advertising catalogues ordered from a sample, it cannot be invoked by a seller who, under such a contract and after notice of a defect in the work, furnished catalogues, in which a gloss or coloring process, to be given to the illustrations, did not exactly cover or register with the first impressions, so that the illustrations were blurred to such an extent as to make all the catalogues worthless.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1352–1361; Dec. Dig. § 294.*

For other definitions, see Words and Phrases, vol. 7, p. 6739.]

Appeal from Trial Term, Montgomery County.

Action by Albert G. Dickinson against Smith Sheldon. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

The action was commenced on the 22d day of April, 1910, to recover the contract price of certain advertising catalogues, printed and pub-

---

lished by the plaintiff and delivered to the defendant, as alleged, in compliance with the terms of a contract entered into between the parties. The defense is, in substance, that the catalogues were defective, and because of such defects were practically of no value, and did not comply with the terms of the agreement between the parties, and for that reason acceptance was refused.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Edward Harris, Jr., for appellant.
George Fort Slocum, for respondent.

McLENNAN, P. J. The plaintiff is a printer and engraver carrying on his business in Grand Rapids, Mich., under the name of "Dickinson Bros." The defendant is a manufacturer of high-grade furniture, including show cases and office, bank, and store fixtures, and is carrying on such business in the city of Rochester, N. Y., under the name and style of the "Rochester Show Case Works." On the 31st day of July, 1907, upon the solicitation of plaintiff's agent (a Mr. Hatfield), the parties entered into a contract in writing by which the plaintiff agreed to print and publish and furnish to the defendant 2,000 booklets or catalogues, intended for distribution among defendant's customers as a means of advertising the goods manufactured by him. It was provided by the contract that such booklets were to contain a certain number of pages of specified size, style of the covers, the paper or material to be used and the manner of binding all being specified. Such booklets were to contain printed matter (to be prepared by the defendant) descriptive of the goods manufactured by him, and were also to contain 42 half-tones, 3x4 inches, from photographs furnished by the defendant, showing or illustrating to the eye the character of the defendant's wares. The price for such 2,000 copies, including the envelopes in which they might be sent by defendant to his customers, was specified. Subsequently, by negotiations between the parties, the order for catalogues was increased from 2,000 to 7,000, and the size of the pages was changed from 4½x6½ to 6x9 inches, all at additional cost, as agreed upon, to be paid by the defendant. Before any part of the performance of the contract was undertaken by the plaintiff, his agent, Mr. Hatfield, had another interview with the defendant in which he represented to the defendant that the catalogues would be greatly improved in appearance if the photographs which, under the original contract, were to be printed in black were colored with a brown tint and such as to give them a glossy appearance; that such effect could be given and would be given by running the brown tint coloring over the black photograph. The defendant stated, in substance, that he knew nothing about such coloring process, but said he wanted the catalogues to be of the best even at the additional cost which was to be charged for such color effect, and the order for such brown tint effect was given by the defendant, provided that samples of such color work be sent to him at Rochester and that if satisfactory he would order the photographs to be so treated and pay the additional cost for such treatment. The samples were so sent, and at the same time plaintiff wrote a letter to defendant in which he stated:

"We are sending under separate cover such proofs (meaning the samples above referred to) but you must not think that the finished work will look like these, as we were anxious to get this off in a hurry and took the proofs on a jobber instead of a cylinder press. This will not carry the body of color nor finish of tone, nor are the edges of the vignette worked up carefully. We took proofs in the gloss photo effect in the brown tint and also in the blue; the brown shade is what we would suggest. Another thing we would call your attention to is the fact that in the gloss photo effect the type is run through a second time instead of being taken out as it would in printing the catalogue."

Upon examining the samples, the defendant ordered that the photographs to be contained in the catalogue should be treated with the gloss coloring.

It appears by the testimony of plaintiff's expert witness that the process is called a—

"gloss process. It is the printing of a cut with two impressions. First, the running of the black or color, whichever the case may be, and then putting the second color, or tint, or gloss, whichever you may call it—gloss tint—directly on top of the other color, which necessitates running it through the press in two different operations. The operation must be of a nature that requires absolute registering; that is, the sheets must be fed through, and all conditions must be so that one cut will strike directly on top of the other."

The witness further said that by the term "registering," as used in the printer's art, is meant the exact covering of the first impression by the last; that they have got to be absolutely alike. The witness also said that a cut out of register has a blurred appearance; that the blurred effect in these catalogues is due to that fact.

After these negotiations were all had between the parties, to which attention has been called, the first consignment of the catalogues, consisting of 25, was shipped to the defendant. He examined them and found that a considerable number of the photographs were not in register; that they had a blurred appearance, due to the fact that the brown-tint coloring did not exactly cover or match the black or original impression, and thereupon he notified the plaintiff to the effect that he would not accept the catalogues unless they could be improved in that regard and the photographs made to register, and he suggested to the plaintiff that he print them all over again in plain black as originally planned. In answer to such communication the plaintiff wrote, in substance, stating that it was almost impossible to get a perfect register in this class of work, and insisted that the catalogues fairly complied with the terms of their agreement. The others of the catalogues were shipped, and, of course, presented the same defects as in the first consignment, and the defendant refused to accept any of them, stating that he would not send them out to his customers and that they were held at the risk and subject to the order of the plaintiff. Thereupon this action was brought to recover the price of the catalogues.

The defendant also ordered from the plaintiff some half-tone plates, at the agreed price of $470, and from that, because of certain expenses incurred by the defendant, it seemed to be conceded upon the trial, $62.90 should be deducted, leaving a balance of $411.10, which the defendant offered to pay, and is willing to pay, to the plaintiff for the half-tones so received by him. So that practically the only ques-

tion involved upon the trial, and the only issue presented to the jury, was whether or not the 7,000 catalogues substantially complied with the terms of the contract or agreement entered into by the parties. The learned court below charged the jury as follows:

"Now, gentlemen, if you should find that the plaintiff has substantially complied with the terms of this contract—that is, that he furnished catalogues of the kind, quality, and workmanship as provided for in the contract, and the sample—then you would render a verdict in favor of the plaintiff for $1,178.45, less what you allow as an offset. The defendant claims, and you have heard his testimony, that he is entitled to an offset of $61.90 for the three items that he had stated to you. If you allow that offset, and you say that the plaintiff has complied with the terms of the contract, your verdict would be $1,116.55 in favor of the plaintiff, together with interest from the 10th day of August, 1908. If, however, from all this evidence, after looking at these various exhibits, and considering the sample that this defendant ordered from, and the terms of the contract, that he was to perform the contract as stated there, do the work according to the terms of the contract, if you are satisfied from all these that the plaintiff has not substantially complied with the terms of the contract, then he is only entitled to recover at your hands a verdict for $411.10, together with interest from the 10th day of August, 1908."

As we have seen, the jury rendered a verdict for the contract price of the catalogues, less the offset of $61.90, which price of the catalogues added to the $411.10, which concededly the defendant owed for the half-tones, makes the amount of the verdict rendered against the defendant, to wit, $1,116.55, with interest from the 10th day of August, 1908.

We are of the opinion that the rule of substantial performance is applicable to such a contract as is the subject of this litigation provided the facts are such as to enable the vendor to invoke that rule.

In the case of Spence v. Ham, 163 N. Y. 220, 57 N. E. 412, 51 L. R. A. 238, which was an action brought to recover upon a building contract, but which respondent urges is applicable to the case at bar in principle, the court states very clearly the conditions and circumstances under which the rule of substantial performance may be invoked by a vendor.

"Substantial performance is performance except as to unsubstantial omissions with compensation therefor. When the omission is slight and unintentional, in order to prevent the hardship of a failure to recover even for that which was well done, compensation is substituted pro tanto for performance. This is the modern rule adopted upon the theory that the parties are presumed to have impliedly agreed to do what was reasonable under all the circumstances with reference to the subject of performance."

In substance, it is held that the rule is based on the theory, first, that the defects or omissions may be remedied or cured so that the work will then correspond with the contract, or the other party may be fully compensated in money for the slight damage done him by the failure to fully perform the contract; and, second, that it is unfair and unjust for the one party, who has reaped the benefit in nearly full measure of the other party's labor, to refuse to pay for the work actually done in accordance with the contract.

In the case at bar, according to the uncontradicted evidence, the admitted defects could not be remedied or cured, since the color work

was part and parcel of the catalogues and once put on it was there to stay, and the evidence shows that the blurred appearance it gave to many of the cuts ruined the whole catalogue. Nor is it pretended that the defendant could be compensated for these defects, and although the case was tried upon the theory of substantial performance, the plaintiff failed to give any evidence tending to show what it would cost to put the defective photographs in exact register and remove the blurred appearance therefrom. It is practically conceded that this could not be done. The defects were not trivial or unimportant and concededly were not made up as was the sample of the cuts furnished to the defendant. The register in the sample is practically perfect, while that of many of the cuts in the catalogue is bad—in some cases very bad—causing them to look blurred.

Mr. Hart, the expert called by the plaintiff, testified that a large number of the cuts in the catalogue, which he specifically called attention to, were out of register and presented a blurred appearance, and that the sample was practically in perfect register. His evidence in that regard is uncontradicted. Under such circumstances, we think there is no basis for the finding that the defects in the catalogues were trivial or unimportant. According to the testimony of the defendant, he regarded them, °because of such defects, worthless and of such character that he could not reasonably send them to his customers as an advertisement of his wares. Neither were such defects the result of inadvertence on the part of the plaintiff. After the defendant received the first 25 catalogues, he called the plaintiff's attention to the defects, advised him that he would not accept the catalogues if the balance of the order was like the few sent him, and suggested to the plaintiff that he print them over again in plain black as originally planned. Plaintiff refused to comply with this suggestion after his attention had been specifically called to the fact that the color work was defective, and that because of such defect the catalogues would not be accepted.

Under these circumstances and under the rule laid down in Spence v. Ham, supra, and in the other cases cited in the opinion of the court therein, we think the defendant was under no obligation to accept and pay for the catalogues in question. He had a right under his agreement to have photographs in which the coloring registered with the original printing precisely as was shown by the sample from which he made his order, and which sample, as we have seen, was in practically perfect register and did not have the blurred appearance.

In this case, upon the conceded facts, the question of substantial performance does not arise, because a large number of the photographs were out of register and to such an extent as to make worthless all the catalogues. It is not pretended that the defects in the photographs in the catalogues could be remedied, and by inserting such defective photographs in the catalogues, each catalogue was practically rendered useless or was an entirely different catalogue from that which the defendant ordered, because, as we have seen, he ordered a catalogue in which the coloring put upon the original photographs should be in practically exact register. They were not in that condition, and the defendant was justified in refusing to accept or to pay for the same.

We conclude that the judgment and order appealed from should be reversed and a new trial granted, with costs to appellant to abide the event.

Judgment and order reversed and new trial granted, with costs to appellant to abide event. All concur.