HARROP et al. v. NATIONAL LOAN & IN-
VESTMENT CO. OF DETROIT, MICH.

(No. 8831.)

(Court of Civil Appeals of Texas. Ft. Worth.
March 30, 1918. On Rehearing,
May 11, 1918.)

1. MECHANICS' LIENS &#9094;73(2) — LIENS ON
HOMESTEAD—CONTRACT.

A mechanic's lien contract on a homestead,
under Vernon's Sayles' Ann. Civ. St. 1914, art.
5631, need not set out specifications of building,
except general essentials.

2. MECHANICS' LIENS &#9094;73(2) — CONTRACT
FOR LIEN.

Contract for lien on homestead providing
for construction of $2,000 house, $600 to be paid
in cash, and $1,400 to be secured by mechanic's
lien, is not invalid, as far as the owner is con-
cerned, because contract was really to repair
and enlarge an old house; contractor allowing
$600 for lumber and material in standing walls.

3. MECHANICS' LIENS &#9094;73(2)—LIENS ON
HOMESTEAD—CONTRACT.

A contract for mechanic's lien on home-
stead, under Vernon's Sayles' Ann. Civ. St.
1914, art. 5631, could validly provide that a
failure to complete improvements should not
defeat lien for contract price, less such amount
as would be reasonably necessary to complete
improvement.

4. HUSBAND AND WIFE &#9094;62—ESTOPPEL—
ACTS OF HUSBAND.

Wife by occupying with her husband a
house not constructed according to a contract
for its erection made by them jointly with a
third person is not estopped to deny perform-
ance of contract on account of acts by husband,
by reason of mere silence, except where such
silence deceives an innocent person, and she
intends that it shall do so.

5. MECHANICS' LIENS &#9094;73(2)—HOMESTEAD.

In absence of substantial compliance with
building contract, under Vernon's Sayles' Ann.
Civ. St. 1914, art. 5631, no lien can be fixed
on homestead.

6. MECHANICS' LIENS &#9094;93—CONTRACT FOR
LIEN—COMPLIANCE WITH CONTRACT.

Where omissions by contractor on improve-
ments to homestead are unintentional, and do
not impair the structure as a whole, and may
be compensated for by deduction from con-
tract price, there is a substantial performance
which entitles contractor to lien, under Vernon's
Sayles' Ann. Civ. St. 1914, art. 5631.

7. USURY &#9094;47—LOAN—PAYMENT IN IN-
STALLMENTS.

Contract of loan company extending $1,400
loan, to be repaid at 6 per cent. interest in 94
monthly payments of $21.42, is not usurious
on its face.

On Rehearing.

8. MECHANICS' LIENS &#9094;161(4) — ATTOR-
NEY'S FEES.

In foreclosure of mechanic's lien on home-
stead, a lien should not be adjudged for attor-
ney's fees.

Appeal from District Court, Denton Coun-
ty; C. F. Spencer, Judge.

Suit by the National Loan & Investment
Company of Detroit, Mich., against Doretta
Harrop and others. Judgment for plaintiff,
and defendants appeal. Reformed and af-
firmed.

Muse & Muse, of Dallas, for appellants.
J. L. Penry, of Ft. Worth, and J. H. Syn-
nott, of Dallas, for appellee.

BUCK, J. We take the following state-
ment of this case from appellants' brief,
which, with such additions as we may see
fit to make, we believe will present the sub-
stantial features:

"The case was tried by the judge without a
jury, resulting in a judgment for the appellee for
$1,446.46, principal and interest, and the fur-
ther sum of $144.64, as 10 per cent. attorney's
fees, with 10 per cent. interest upon both
amounts from date of judgment and with fore-
closure of lien upon the homestead property, ex-
cept as to the judgment for attorney's fees.

"The appellee sued upon a note for $1,400 dat-
ed February 22, 1915, executed by the appellants
to K. C. Berry, or order, due April 1, 1915, with
10 per cent. interest from date, and providing
for 10 per cent. attorney's fees and acknowledg-
ing therein a mechanic's, materialman's, build-
er's, and contractor's lien on the premises de-
scribed in appellee's petition, and alleged the ex-
ecution of such lien of same date to secure the
payment of said note, and that said note and lien
were assigned to the appellee, and that on March
1, 1915, appellants, to further secure said note,
executed to appellee a bond for $2,800, condi-
tioned for the payment of $21.42 per month
on said note, for 10 per cent. attorney's fees,
and that said bond was secured by deed of trust
upon the same property described.

"It is admitted by both parties that the trans-
action shown by the instruments sued on set out
in the statement of facts was a loan of money
by the appellee, and that it is the owner of the
obligations alleged, and of any liens that may
exist thereunder.

"The appellants pleaded that the property cov-
ered by the alleged lien was a homestead; plead-
ed usury against the debt, and that the lien was
void: (1) Because the lien contract provided
that the house to be constructed was to be built
in accordance with specifications made part of
the contract, when in fact there was never any
written specifications attached or otherwise ex-
istent, hence the essence of the contract was ver-
bal and the contract void; (2) because the writ-
ten contract lien provided for the construction of
a new house to cost $2,000 when in fact the
thing done was to enlarge and repair an old
house for the contract price of $1,400; (3) be-
cause the contract, however construed, whether
for a new house or the repair of an old house,
was breached, and the house not completed, and
the plaintiffs only entitled to a quantum meruit
recovery, which was destructive of the lien."

The court filed his findings of fact and
conclusions of law, and no assignment in the
appellants' brief attacks the correctness of
a finding, and we adopt the findings of fact
as thus made, which are as follows:

"The property in controversy is now and was
the homestead of the defendants Harrop and wife
continuously during all the times as alleged in
their answer. The homestead residence on said
premises prior to Christmas, 1914, consisted of a
six-room frame cottage used and occupied as a
home by the defendants; that at said time the
cottage was partially destroyed by fire, the roof
of the house being burned off and the ceilings
being burned, leaving the walls and foundation
standing.

"The defendants made the written application
for the loan from the plaintiff, and executed the
mechanic's lien note and contract to K. C. Ber-
ry, and the bond and deed of trust sued on, as
set out in the statement of facts. That S. M.
Bradley solicited business for the plaintiffs, but
acted as the agents of Harrops in taking their
application for the loan and forwarding it to the
plaintiff. He also wrote the mechanic's lien
note and contract at the instance of the con-

tractor, Berry, and A. H. Harrop. Bradley knew at the time of the execution of the mechanic's lien contract the condition of the homestead residence upon said premises as above stated, but was advised by said Berry and A. H. Harrop at the time of drawing said mechanic's lien contract that the old house was to be torn down and the lumber therein used in the construction of the house provided for under the mechanic's lien contract, and also advised that the $600 specified in the contract represented the valuation by the contractor of the material in the old house that was to be used in the construction of the house provided under the contract, and that the cash payment of $600 specified in the contract, was to be satisfied by the appropriation of the material in the old house by the contractor, and that the lien of $1,400 was for the completion of the house contracted for; that in fact all of the labor done, material furnished, and improvements made by the contractor, Berry, under the mechanic's lien contract was made in repairing and enlarging the old house, which was in fact the agreement between Berry and A. H. Harrop and acquiesced in by Mrs. Harrop, and which Berry agreed to do for the sum of $1,400 specified in the contract, but the plaintiff nor S. M. Bradley had no knowledge of such actual agreement in fact, and their knowledge was restricted to the terms of the mechanic's lien contract itself as disclosed on the face of such instrument. No new house was built under the contract. The thing done was the repair and enlargement of the old house, and Bradley and the plaintiff relied upon the terms of the written contract and were led to believe that the house constructed was a new house under said contract.

"The plan and specifications referred to in the mechanic's lien contract were not introduced in evidence. The evidence showed that the specifications were never in writing, but were verbal. There was, however, a plan of the house shown to S. M. Bradley prepared by the contractor, K. C. Berry. The verbal specifications for the improvements were agreed to by A. H. Harrop and the contractor, Berry, and acquiesced in by Mrs. Harrop, no written plan or specifications were ever shown or agreed to by Mrs. A. H. Harrop, except a floor plan of the house to be completed, to which she consented and agreed.

"The improvements constructed by K. C. Berry under said mechanic's contract were never completed in accordance with the contract and agreement between Berry and the said defendants, as actually made between them, and the contract lacked $263 of its completion, which was the reasonable sum and reasonable cost necessary to the completion of Berry's contract aforesaid.

"The things contracted to be done in the construction of the improvements were substantially as alleged in the answer of the defendants Harrop and wife, and the breach of contract by K. C. Berry is also substantially as alleged in said defendants' answer, except as to the amount necessary to complete it, which was the sum of $263.

"The contractor executed a bond to said defendants, which was indorsed by the defendants to the plaintiff, and Berry assigned to the plaintiff the mechanic's lien note and contract, as shown in the statement of facts, and the plaintiff became the holder and assignee of the mechanic's lien note prior to its maturity.

"The transaction between the plaintiff and defendants was one to borrow money by said defendants, and it was the intentions of the plaintiff and the said defendants that the money borrowed was to be used in taking up the mechanic's lien aforesaid, the ownership of which lien was to vest in the plaintiff as security for the $1,400 loaned, and the plaintiff became the owner and holder of all the lien alleged in the pleadings and under and by virtue of the said mechanic's lien. And it is conceded by defend-

ants' counsel that such is the fact, to the extent that any lien existed.

"It is admitted by the plaintiff and said defendants, as shown in the statement of facts, and here adopted, that said $1,400 loan was to draw 6 per cent. interest, to be paid in 94 monthly installments of $21.42, which monthly payments would discharge the $1,400 loan with 6 per cent. interest thereon from the date of the bond to plaintiff herein sued on; that on April 8, 1915, the draft of the plaintiff for $1,390 payable to Doretta and A. H. Harrop and the Exchange National Bank of Denton was cashed, with the indorsement of the defendants and K. C. Berry thereon, and by agreement between S. M. Bradley the contractor, Berry, and A. H. Harrop, acquiesced in by Mrs. Harrop, said $1,390 was placed on said date to the joint credit of A. H. Harrop and S. M. Bradley in the Exchange National Bank of Denton, and was to be paid out to K. C. Berry upon his said contract on the joint check of S. M. Bradley and A. H. Harrop. This was done upon the representation that the house was practically completed, except in minor details, stated by A. H. Harrop and by the contractor, Berry, to S. M. Bradley, and that the checks offered in evidence aggregating $1,390 were jointly signed by A. H. Harrop and S. M. Bradley, except as to three, which were signed by S. M. Bradley himself, and signing the name of A. H. Harrop under Harrop's authority so to do, said checks made payable to Berry and to such parties as he directed or to whom money was due for labor and material upon said house, exhausting the $1,390 deposit.

"Said defendants having acquiesced in such deposit of the money and to its payment upon such joint checks as aforesaid, and Mrs. Harrop having acquiesced therein, and the representations of A. H. Harrop and the contractor, Berry, being that the house was practically completed, and the defendants in the latter part of April, 1915, moved into the house, and the plaintiff having acquired the mechanic's lien note prior to its maturity, notwithstanding Mrs. Doretta Harrop did not accept the house or the improvements as completed, the defendants are estopped."

From the above found facts and the further fact, which the court found, that the plaintiff was an innocent holder for value and the assignee of the mechanic's lien, the court concluded as a matter of law that defendants were estopped to deny the debt or the lien, and that plaintiff was entitled to judgment.

[1] The first question raised by appellants' first assignment is whether the failure to include in the contract between appellants and the contractor the specifications and plans of the building to be erected or repaired destroys the lien which said contract purports to grant. The note given and signed by both appellants recites:

"This note is given in payment of the erection of one-story frame house of seven rooms, on certain real estate," describing the land.

The mechanic's lien contract, duly acknowledged by both appellants, provides that:

"The said K. C. Berry, contractor, hereby agrees and binds himself to build, erect, construct, and complete in a good, workmanlike manner, according to the plans and specifications therefor furnished by K. C. Berry and made a part of this contract, a one-story frame house of seven rooms upon" the land described.

This instrument then proceeds to give and grant the lien and to provide that a failure

to complete the house shall not defeat the lien, but such lien shall exist in favor of the contractor for the full amount specified less the amount of money necessary to complete the house.

Article 5631, Vernon's Sayles' Tex. Civ. Stats., provides in part that:

"When material is furnished, labor performed, erections or repairs made upon a homestead, if the owner thereof is a married man, then to fix and to secure the lien upon the same it shall be necessary for the person or persons who furnished the material or performed the labor, before such material is furnished or labor is performed, to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife, and privily acknowledged by her, as is required in making sale of a homestead."

The expression used in the above statute, to-wit, "setting forth the terms thereof," referring to the contract in writing, evidently should be construed to mean that the essential conditions or statement of the contract should be included in the written instrument, not the minute details involved in the labor to be performed and the material to be furnished. In the case of Phelps v. Sheldon, 13 Pick. (Mass.) 50, 23 Am. Dec. 659, it was held that a contract was not void for uncertainty where the builder agreed to construct a feeder for a canal therein described for the amount specified, and the contract itself stated what was meant to be included, viz. "every kind of work connected with fetching the water into the canal." In Myer v. Fruin (Sup.) 16 S. W. 868, it is held that, where a contract for the construction of a house stipulated that the work should be done according to the attached plans and specifications, and a dispute arose as to how a part of the work should be done, the builder might put in evidence a plan not attached to the contract, but which was exhibited to him at the time he made the contract, as explaining how the work should be done about which the dispute subsequently arose. These cases are cited, and many others to the same effect might be mentioned, as supporting the proposition that a valid contract may be entered into between the owner and the contractor where the plans and specifications are not in writing, although the contract is evidenced by a written instrument which refers to said plans and specifications, and also that, where plans and specifications are in writing and attached to and made a part of the written contract, evidence aliunde the written contract is admissible to explain and shed light upon what under the contract, including the plans and specifications, was intended by the parties should be done. It will be noted that, while the mechanic's lien contract refers to the plans and specifications furnished by the contractor and makes them a part of the contract, yet it does not provide that such plans and specifications shall be in writing. Certainly, were not a homestead involved, the owners and the contractor could have formulated and executed a written contract, binding upon each, providing that the house should be built according to plans and specifications agreed upon by and between the parties; and under such contract it would be permissible to show what the verbal understanding was in order to determine whether or not the terms of such contract, including such verbal agreement, had been complied with. Upon a breach by either party the other could sustain a suit on the written contract, and would be permitted to show what the verbal agreement was in order to establish the claimed breach. Hence we are of the opinion, though we have been cited to no cases directly in point, and after considerable investigation have found none, that it was not essential to the validity of the contract between the Harrops and the contractor, or to the vitality of the lien, as provided for by article 5631, supra, that the plans and specifications should be included in and made a part of the written contract. We have examined every authority cited by appellants and appellee upon this assignment, and many others, and have failed to find a single decision which, in our opinion, is contrary to the conclusion by us reached. Hence we overrule appellants' first assignment, and also the second, which involves the same question.

[2] Under appellants' third assignment it is urged that the court erred in foreclosing the lien alleged and sued on upon the admitted homestead, because the alleged mechanic's lien on its face by its terms contracted for the construction of a house to cost $2,000, $600 of which was to be paid in cash, and $1,400 secured to be paid by the mechanic's lien. It is insisted under this assignment that the undisputed evidence shows that the actual contract made between the contractor and the appellants was to repair and improve the old house, which had been partially burned, and that in fact no new house was built or constructed. The evidence shows that the appellants offered and the contractor agreed to accept the lumber and material in the standing walls, the foundation, etc., in lieu of the payment of the $600, and that such material was used by the contractor. In Churchill v. Bielstein, 9 Tex. Civ. App. 445, 29 S. W. 392, it was held that no impairment of the lien created in the original agreement resulted where a husband and wife entered into a contract with a third person, by which the latter was to erect for them a dwelling on their homestead property, and they were to pay him a certain amount therefor, in monthly payments, by executing to him their promissory notes, one clause of the contract stating that such notes were to be delivered so that he could "negotiate them for labor and material for construction of said dwelling house," and the husband subsequently agreed orally with the contractor that certain of the notes were to be deposited in trust for said husband, and that he

was to furnish the contractor with material of a value equal thereto to be used in the building. There is no contention made that the salvage from the old house was not used in the repaired or new building; that it was not of the value at which the contractor took it; that the owners did not get the full benefit thereof; or that they were injured in any way by this agreement which they made with the contractor. The court found that Mrs. Harrop acquiesced in this agreement, but that neither plaintiff nor its representatives had any actual knowledge thereof, and that their knowledge was restricted to the terms of the mechanic's lien contract itself. We cannot understand how it can be reasonably contended that any injury to appellants is here shown, or any right denied or any ground for relief evidenced. If the salvage was worth what they sold it for to the contractor, and was available for the uses to which the latter put it, the appellants have no ground of complaint. If it was not worth the price they received, in the way of credit on the contract, certainly they cannot complain, and only the plaintiff, whom it is shown had no knowledge of this private agreement, has reason to claim injury. The assignment is overruled.

[3-6] Under the fourth assignment appellants urge that, irrespective of other alleged errors, the judgment is erroneous because, as found by the court, the improvements contracted for lacked $263 of being completed, and that the plaintiff, as the assignee of the contract and lien, was entitled to recover upon a quantum meruit upon said contract, which was destructive of any alleged lien thereunder; hence that no lien existed upon the homestead by virtue of the mechanic's lien sued on. The mechanic's lien contract executed by appellants provided:

"That a failure to complete the improvements herein contracted for shall not defeat such indebtedness and lien, but in such event the indebtedness and lien upon said premises and improvements shall exist in favor of said contractor, his heirs and assigns, for said contract price, less such amount as would be reasonably necessary to complete said improvements according to said plans and specifications."

We know of no statutory or constitutional inhibition against this sort of provision, and believe that such a provision is valid. Under it a contractor, or his assignee, would not be required to bring his action in the form of quantum meruit, but he could bring suit on the contract, in which event the owner would have the election, by way of cross-action, to require a specific performance, or to plead a deduction in the amount of the contract price to the extent of the sum necessary to complete the contract according to its terms. Doubtless, were it not for the finding that the appellants were estopped from denying that the contract was completed according to its terms, and had the pleadings of the defendants below been so drawn as to provide for this relief, the court would have

excluded the $263 from the judgment. The cases of Murphy v. Williams, 103 Tex. 155, 124 S. W. 900, Paschall v. Pioneer Ass'n & L. Co., 19 Tex. Civ. App. 102, 47 S. W. 98, and Walker v. Woody, 40 Tex. Civ. App. 346, 89 S. W. 790, are cited by appellants as sustaining the contention made in the assignment. These cases do lay down the rule that the contractor or his assignee cannot sue on quantum meruit, where there has been a failure and refusal to complete the contract according to its terms, and the owner has been compelled to complete it himself. In Murphy v. Williams, supra, it is said:

"No such lien can exist on the homestead without compliance with the constitutional provision. The debts of this kind to which that provision allows the homestead to be subjected are 'for work and material used in constructing improvements thereon,' and for them only when 'contracted for in writing with the consent of the wife,' etc. And the lien to secure such debt is declared to be for * * * 'improvements thereon as hereinbefore provided,' which plainly means improvements actually made by the use of the work and material. Both the contract and the employment of the work and material upon the homestead in compliance with it are thus made essential to the lien. It is evident, therefore, that an assignment of notes given for the price to be paid for an improvement yet to be made and of the rights of the contractor under his contract therefore passes no existing lien, but only the right to such as may be perfected by the subsequent performance of the contract. The coming into existence of the lien still depends upon the doing of that which the contractor is to do under the contract. No agreement can change this, because the lien thus provided for is the only one which the parties are allowed to impose upon the homestead, and it can be imposed in no other way than by the concurrence of the prescribed conditions."

The statement, in the quotation above, to the effect "No agreement can change this," etc., refers, not to the original agreement between the contractor and the owners of the property, but to the alleged agreement made subsequently by the owners with the purchaser of the note given by the owners to the contractor. We think under the statute (article 5631, supra) a lien will be fixed upon a homestead only to the extent of the labor performed or material furnished, but we are of the opinion that a valid contract could be entered into by the owners and the contractor by the terms of which the contractor was to complete the house, except as to the painting or the papering or the plastering, etc., and that there would be a valid lien against the completed premises to the extent of the labor performed or the material furnished. We construe this contract as in effect providing that, in case the contractor should not perform some of the labor or furnish some of the material provided for by the terms of the contract, he would have a lien for the labor performed and material actually furnished, subject to the right of protection to the owner against a payment exceeding the contract price. The question of whether or not a credit should have been allowed in the sum of $263, is not raised under this assignment, but is, per-

haps, raised under the sixth assignment, which we will not consider. The evidence shows that the appellee sent a check in the sum of $1,390, covering the loan of $1,400, ($10 having been retained by the appellee to take care of some alleged expenses) to S. M. Bradley, whom the court finds was the agent of appellants in the transactions leading up to the making of the loan; that upon receipt of the check it was, upon agreement of Bradley and appellant A. H. Harrop, placed in the bank, to be drawn out upon checks signed by both Harrop and Bradley, and for the purpose of paying the contractor as the work progressed. The court finds that appellants acquiesced in this action and to the payment of the amounts upon the joint checks. It is further found by the court that A. H. Harrop stated to Bradley before the final payment was made to the contractor that the house was practically completed, and that the appellants moved into the house shortly thereafter. No complaint was made by either appellant at that time that the contract had not been fulfilled according to its terms. A. H. Harrop expressed himself to Bradley as being well pleased, and Mr. and Mrs. Harrop made no complaint or contention that the contractor had failed to perform his contract in any particular until some time in September or October, perhaps five months after they had moved into the house, and after they had gotten behind in the monthly installments to the appellee company. The contractor was required to give a bond for the fulfillment of his contract. At the time of this complaint to Bradley by Harrop Bradley mentioned to Harrop the fact that the contractor was under bond, and stated to him that, if the house had not been finished according to specifications, he (Bradley) would have a Mr. Davis go out and look at the house and see what was needed to complete the contract, and would have the contractor's bondsmen pay for it, and that it would not cost the Harrops a cent. Harrop replied to this offer that he did not want Bradley "messing around" his house. While Harrop denied Bradley's testimony as to the matters referred to, yet the court was authorized to find that Bradley's statement was the truth, and we think perhaps he would have been justified in finding that both appellants accepted the house in its then condition as a fulfillment of the contract on the part of the contractor. But the court in effect found that Mrs. Harrop did not accept the house or improvements as completed. While a wife may be estopped, when she is silent in a case where not to speak would amount to a positive fraud, yet her mere silence in the premises will not be chargeable to her except where such silence or suppression deceives an innocent person contracting with reference to her property, and she intends that it shall do so. Speer's Law of Marital Rights (1916) p. 307. The court finds that she acqui-

esced in the placing of the money in the bank to be drawn out upon the joint check of her husband and Bradley, for the purpose of paying it out to Berry upon the contract. But we have been cited to no evidence tending to show that Mrs. Harrop knew of the statement claimed by Bradley to have been made to him by Harrop to the effect that the house was completed, upon which Bradley drew a check covering the balance due, or that Mrs. Harrop knew that Berry had been paid the balance of the contract price. In fact, Harrop himself denied that he knew until long after that one check for $450, had been drawn in favor of Berry. Though the court's findings upon this point may conclude the husband, they do not conclude the wife. A wife by occupying with her husband a house not constructed according to a contract for its erection, made by them jointly with a third person, is not estopped to deny performance of the contract. Paschall et ux. v. Pioneer Savings & Loan Co., 19 Tex. Civ. App. 102, 47 S. W. 98, writ denied. Nor would Mrs. Harrop, in the absence of her knowledge and acquiescence, be estopped because her husband declined to permit Judge Bradley to have some one to examine the premises with a view of calling on the bondsmen to finish the contract in the particulars of which complaint was made. In the Paschall Case, supra, it was held that, in the absence of a substantial compliance with the building contract, no lien could be fixed on the homestead, and with this holding we concur. But we think there was a substantial performance of the contract, though in certain particulars the contractor failed to comply with the plans and specifications. Substantial performance of, or substantial compliance with, a contract is performance, except as to unsubstantial omissions, with compensation therefor, and when the omissions are slight and unintentional compensation is substituted pro tanto for performance, to prevent the hardship of a failure to recover for that which is well done. Linch v. Lumber Co., 80 Tex. 23, 15 S. W. 208; Johnson v. White, 27 S. W. 174, writ denied; Dickinson v. Sheldon, 146 App. Div. 144, 130 N. Y. Supp. 889, 892. Such relief is permissible in a case where the deviations are inadvertent or unintentional, and are not due to bad faith, and do not impair the structure as a whole, but are remediable without doing damage to other parts of the structure, and may without injustice be compensated for by deductions from the contract price. Littell v. Webster County, 152 Iowa, 206, 131 N. W. 691, 132 N. W. 426; Smith v. Russell, 140 App. Div. 102, 125 N. Y. Supp. 954; Mitchell v. Caplinger, 97 Ark. 278, 133 S. W. 1032; Pippy v. Winslow, 62 Or. 219, 125 Pac. 298; 4 Elliott on Contracts, § 3693 et seq.

As shown by the cases, and many others which might be cited, a contractor who unintentionally and without bad faith fails in

certain minor respects to complete the building according to the exact terms of the contract is not denied a right of recovery, nor in such case is he confined to an action on quantum meruit, but he may sue on the contract, leaving it to the defendant to plead the claimed variance or deficiencies, and to the court to make proper reduction therefor. Here we conclude that, while plaintiff in the instant case would not be denied any recovery by reason of the finding of the court that the sum of $263, would be required to complete the building according to the contract, and while the husband might be estopped by the facts shown, as found by the court, from denying such completion, yet the estoppel would not operate against the wife, and that $263, with interest at 10 per cent. from the date of the note, must be deducted from the amount for which a lien was fixed against the wife jointly with her husband. The judgment must also be reformed as to the 10 per cent. attorney's fees, as affecting the wife and the homestead, upon $263, and interest thereon.

[7] What we have said above, we think, disposes of the question presented in the seventh assignment. We do not consider the contract as usurious. Interstate B. & L. Ass'n v. Goforth, 94 Tex. 259, 59 S. W. 871. It was agreed that the loan of $1,400 extended by the appellee would be repaid at 6 per cent. interest in 94 monthly installments of $21.42 each, beginning March 1, 1915. The court did not include the $10 retained out of the $1,400 by the appellee to pay appellant's attorney's fee, but excluded that amount, also $14 paid by appellants in the way of a membership fee in the association. Rabb v. Texas, L. & Inv. Co., 96 S. W. 77; Martin v. Land Mortg. Bank, 5 Tex. Civ. App. 167, 23 S. W. 1032.

The judgment will be reformed in the respects indicated, and as reformed will be affirmed, with costs of appeal taxed against appellee.

Reformed and affirmed.

## On Rehearing.

[8] Both appellee and appellants have filed motions for rehearing. Appellee calls our attention to one expression in our original opinion which was so worded by inadvertence, to wit:

"The judgment must also be reformed as to the 10 per cent. attorney's fees, as affecting the wife and the homestead upon $263, and interest thereon."

It is true that the trial court did not adjudge any lien on, or grant a foreclosure against, the homestead for attorney's fees. In this we think he was correct. Harn v. Am. Mut. B. & L. Association, 95 Tex. 79, 65 S. W. 176; Am. B. & S. Association v. Daugherty, 27 Tex. Civ. App. 430, 66 S. W. 131, writ of error refused, 95 Tex. 673; Summerville v. King, 98 Tex. 332, 84 S. W. 643,

83 S. W. 680. The above-quoted expression in the original opinion was intended to read and should have read:

"The judgment must also be reformed as to the 10 per cent. attorney's fees, as affecting the personal judgment against the wife, upon $263, and interest thereon."

And the correction is here made, and the judgment will be so entered. We have carefully examined both motions, but have concluded that the same should be overruled, except in respect to the correction already noted, and it is so ordered.

Motion overruled.

CONNER, C. J., not sitting, serving on writ of error committee at Austin.