## MACK v. NORTH AMERICAN BUILDING & LOAN ASS'N.

### No. 2821.

Court of Civil Appeals of Texas. El Paso.
May 4, 1933.

Rehearing Denied June 15, 1933.

J. C. Patton and Lee R. Stroud, both of Dallas, for appellant.

Earl A. Forsythe and John C. Read, both of Dallas, for appellee.

PELPHREY, Chief Justice.

Appellee brought suit against appellant seeking to recover the sum of $2,204, alleged to be the balance due on a real estate mortgage note in the sum of $2,250, executed by appellant and secured by a deed of trust upon the N. W. 33⅓ feet of lot 5 in block C/621 of Cole's Washington Avenue addition to the city of Dallas, Tex.

From appellee's petition it appears that the note sued upon and the deed of trust executed to secure the payment thereof were given for money advanced by it to appellant to take up, renew, and extend certain existing liens on the property of appellant. The amounts alleged to have been advanced by appellee were:

A balance of $1,514.10 due on certain vendor's lien note for $2,750, executed by Grant Curtis to Mrs. Flora H. De Woody and assumed by appellant, $126.82 due on a note to H. L. Cannady Company for paving lien on appellant's property, secured by a mechanic's lien contract, $46.20 paid by appellee for state and county taxes, $66.12 paid for city taxes, and $497.76 preferred interest in a certain mechanic's lien note executed to M. W. Shannahan by appellant.

Appellant, in addition to a general demurrer, special exceptions, plea in abatement and a general denial, attempted to plead certain offsets, that the contract was usurious, and sought to recover the statutory penalty for usurious interest collected.

On the question of the usurious nature of the contract and her right to recover the statutory penalty therefor, appellant alleged:

"Defendant says that all the fees named in said petition were in fact as agreed· and understood in making the loan and giving the said note or contract, really and truly charged unlawfully by plaintiff simply for its lending to her of its own money, and in fact and in law was really for the defendant's use and detention of the sum so loaned, under the mere guise of fees, and is in fact usurious, and is in fact part of the interest and the whole contract is usurious as to fees, and the expressed 9 per cent interest and the stock and shares charged to her in the contract is also only a method and evasive scheme then so made and framed to so charge her for the use and detention of the principal money so loaned under the guise of stock; and is all and each usurious and void and not collectible, nor any of it; all of which she offers to prove."

"6. She has paid $103.00 in cash on said usurious interest in said form of 9 per cent, and fees and stock, etc., as aforesaid, thus extorted from her as usury; and is under the statute providing that she may recover some double as a penalty entitled to so recover same, and so pleads, and asks to recover the same as a penalty. * * * Defendant says that in addition to the above, and in aid of her several pleas above stated, that the plaintiff insisted at the time of said loan that it must in order to make the loan and to suffer her to use their money, it must require of her, and it did require of her to take out numerous shares of stock and to make payments on them, when it was never intended that she should share any dividends as a stockholder or receive benefits thereby; but that under the guise of paying for stock and shares and her being a member, such payments were intended really for the use of the money and its detention, and under the law constitutes that which the law considers, and in fact was for the use and detention of the money loaned and therefore usurious and exceeded 10 per cent interest per annum when taken alone or in connection with the above and foregoing 9 per cent and fees and other charges and impositions, all of which, as aforesaid, were for the use and detention of the money loaned, and which, as 'she alleges and believes, have received numerous payments made by her amounting to $200.00 on the shares of stock alone.'"

"15. Defendant says the note or contract sued on provides that 9 per cent for the five-year term of the loan per annum or for its term as may be shown is provided for contractually, and the payment of all said demand with the five year interest accumulating and accumulated to the end of the loan's term, with the fees and other matters therein charged, have all been declared due and payable for the full term of five years, and are made collectible by the contract sued on, which of itself exceeds the ten per cent per annum of the principal and constitutes usury."

"16. Defendant says the $103.00 she has paid, under the pretense of Plaintiff's part that the same was fines, fees, interest, and demands for the trouble in plaintiff loaning its own money, constitutes interest not only usurious and unlawful, but since this $103.-50 has been so paid, and contract calls for it as fees, which is but interest, she is entitled to recover double the said $103.00 under the statute in such cases so made and provided, and for which she prays."

She also claimed a credit on the Shannahan mechanic's lien note as follows:

"7. She shows that the pretended improvement claim which plaintiff alleges to have taken up and merged into the $2250.00 note or contract sued on was done under these facts, and these are the facts; that said Shannahan was a carpenter and was acting for the plaintiff and for himself with their understanding and with authority that he should aid plaintiff company in getting business loans and borrowers on residences such as was defendants, and that in turn the said plaintiff (called the company here) in obtaining and negotiating such loans, that said plaintiff would require improvements to be made on the security and aid him in getting that job and they would work together in the matters of such loans, and such improvements to be so secured in the name of said Shannahan but to be taken up after the improvements be made, and that said Shannahan should be paid for improvements; it was their plan and is a proper custom to have the borrower sign such contract (like the said Shannahan contract) before any improvement would be made; that said contract to so pay Shannahan was signed by Defendant in the sum of $784.08 to said Shannahan to make the improvements on this security, her house and home; that it not then being definitely decided or known whether the said improvements would come to much or little, and that said Shannahan would only be paid a proper and reasonable value for whatever improvements he would really make, all to be supervised and attended to by the plaintiff, the lender, who was to have enough made to satisfy its desire and no more, and out of the $784.08 contract for that whole sum would be merged into and figured into the $2250.00 loan and would be paid by her in installments; and that whatever the improvements really made by Shannahan would be actually and reasonably worth, to be valued and inspected fairly and accepted by plaintiff should be all that would be paid Shannahan from same, and that paid him justly and fairly should be deducted from the $784.08, and that the balance would be paid her in cash or treated as a then cash payment by her to plaintiff. She says that after the $784.08 contract was signed said Shannahan improved under it the said house to the value and reasonable sum of $100.00 only, painted it outside and put in a hot water heater and some other small matters, but only to the value or reasonable charge of said sum of $100.00; that the plaintiff had charge of the having Shannahan to so improve and was contracted by her and plaintiff and plaintiff was to inspect Shannahan's improvements as would really be made, and have enough improvements made to satisfy it, as the desired improvements of the house as its security; Plaintiff assured her it would attend to this for her fairly, and inspect fairly the improvements whether much or little; Plaintiff did so supervise and have Shannahan make the improvements; and they were of not exceeding the reasonable charge all told of $100.00; Plaintiff's agent went out and accepted, valued and inspected for her and it, as agreed; this contract for the $784.08 so merged in the $2,250.00 is not complained of, it was customary to so do, and to put it into the note; but the Plaintiff so inspecting the lot, her home and its security, accepted the $100.00 improvement as satisfactory, and was to let the $784.08 still go into the note and all to be so paid by her, but she was to have the difference in cash then paid, or then credited as if then paid on her said note,—this difference equalled fairly and properly the sum of $654.08, which she was entitled to then and there as a cash credit on the loan. * * *"

"9. Your defendant shows that she is an illiterate negro woman, unaccustomed to attend to any kind of business and incompetent to attend to business of this kind or character, being without education, barely able to read and write, her occupation being that of a house-maid; and that the plaintiff and its agents in all their aforesaid dealings well knew these facts and designedly took advantage of her want of skill and information in order to impose all of its excessive and usurious consideration, and particularly the said $784.08 of which she got only $100.00 worth of improvements; and all these wrongful acts, designs and proceedings were known to and done by its Secretary, President, Vice-President, and General Manager, and its directors, in said corporation, which itself was incorporated with the intent of doing that kind of business in general and this transaction as so performed in particular; that the plaintiff, as she alleges and believes, had agents and particularly the Mr. Shannahan named in Plaintiff's pleadings, who were, and he was a mechanic, and that it was a part of the plan that said agents, who were carpenters, and the carpenter Shannahan, should act together with Plaintiff in securing loans of this very character and that the contractor or carpenter Shannahan should then take large sums in the form as was taken his demand for $784.08 (the 8¢ being for a coloring to indicate preciseness of the amount of improvements), and should have this borrower to sign up for same before the improvements should be made, it not being known what would be done or its cost, and then to collect same. That the reasonable sum for all said improvements did not exceed $100.00, viz: $50.00 for painting and $15.00 for an old second-hand Pittsburgh water heater, and pretending to cover the roof into which was stuck not more than six new shingles reasonably worth not more than 50¢, and some other slight matters not being of value of more than $100.00 in all. That said $784.-

08 was well understood not to be paid except to what amount said improvements were reasonably worth; and that she should have a cash credit for same or of the surplus. * *, * ''

"12. She shows and pleads that the consideration for the improvements, as pleaded and charged, by plaintiff, as made upon her home entirely failed and was never received nor the improvements made except as to the $100.00; that while other improvements were discussed, and much other improvements discussed, and Plaintiff had the right to exact improvement discussed, and plaintiff had the right to exact improvements to the amount named of $784.08, that it agreed to supervise said improvements and have only enough made thereof to be acceptable to it as improvement on the security for the loan; and Plaintiff did inspect and supervise, and stop said improvements when their value amounted to only $100.00 or less; wherefore the consideration failed for same except as to $100.00."

"13. Defendant says that the Plaintiff knowing that $684.08 aforesaid should have been paid her either in cash when the loan was closed, or should have been credited as a cash payment on said loan at that time, and knowing the other facts and defenses herein alleged, did not collect nor try to collect from her upon the loan, letting her pay only from time to time as she saw proper. *, * *''

She further attempted to plead a cross-action for wrongfully suing out a writ of sequestration and threatening to have same executed, thereby causing her to worry and become sick, losing time from her work.

In this connection she sought to recover exemplary damages and attorney's fees.

Appellee urged a general demurrer to the answer of appellant, which was by the court sustained, and, after evidence had been introduced as to appellee's cause of action, the jury was instructed to return a verdict for appellee in the sum of $2,473.99 and foreclosing the deed of trust lien on the property of appellant.

Appellant duly filed her motion for a new trial, and. same being by the court denied, she has appealed.

### Opinion.

The sole question presented here is the correctness of the trial court's action in sustaining the general demurrer to appellant's answer and cross-action.

Article 5071, Revised Statutes, provides that all written contracts which may in any way, directly or indirectly, provide for a greater rate of interest than 10 per cent. per annum on the amount of the contract shall be void and of no effect for the amount of the value of the interest.

Under this article it has been held that, where a pretended subscription to stock was a scheme to avoid usury laws, and such contract and contract for the loan were one transaction, the contract was usurious. Cotton States Bldg. Co. v. Reily (Tex. Civ. App.) 50 S. W. 961; American Bldg. & Savings Ass'n v. Daugherty, 27 Tex. Civ. App. 430, 66 S. W. 131 (writ refused), and that, where payments have been made under such a contract on the stock, the full amounts of such payments should be credited on the principal of the loan.

We are of the opinion that appellant's petition is sufficient, as against general demurrer, especially when the recital in appellee's petition that a portion of the monthly payments was to be applied to the payment of stock in appellee company is considered, to show appellant was entitled to a credit of at least $200 on the principal for the amounts alleged to have been paid by her.

While the allegations as to the Shannahan transaction are not as clear and concise as they might be, still, they are sufficient, we think, to show that she was called upon by appellee to execute the contract with Shannahan for improvements to be made in the future and that appellee agreed with her that, if the full amount was not used in making the improvements, she would be given credit on her note for the unused portion. If that be true, then she was entitled to establish, if she could, that the full amount was not expended in the improvements made.

Under her allegations that she had paid $103 as usurious interest, which had been collected from her under the pretense that it was for fines, fees, and demands for appellee's trouble in making the loan, she was clearly entitled to maintain a cross-action against appellee for the recovery of the statutory penalty. That is, her allegations were sufficient as against a general demurrer.

Being of the opinion that the trial court erred in sustaining appellee's general demurrer to appellant's answer and cross-action, the judgment will be reversed, and the cause remanded.

### On Motion for Rehearing.

Appellee, in its motion for rehearing, strenuously contends that we erred in holding that appellant's pleading for the recovery of usurious penalty and as to the Shannahan transaction, were sufficient against a general demurrer.

As to the statutory penalty for usury, it now asserts that, before a party can recover usurious interest, it is necessary that they plead the usurious contract, the payment of the usurious interest, the dates paid, to whom paid, and plead facts showing that the interest charged and collected exceeded 10 per cent. per annum.

It appears from appellee's petition that appellant had paid five payments under the contract; that is, according to their allegations, $56.25 as payment of fees, premiums, and other charges incident to the making of the loan and $84.40 as interest, making a total of $140.65. It also appears that $2,204 was the amount alleged to be due on the note on July 29, 1931. This shows that there had been paid the sum of $46 on the principal between the 5th day of August, 1930, and the above date.

Giving every reasonable intendment to appellant's pleading, she alleges that she paid in addition thereto $103, which would make a total of $243.65, or more than 10 per cent. on the principal sum the first year. It being taken as true that the amounts paid by her as fees were really for the use and detention of the sum loaned, under the mere guise of fees, these facts, we think show that more than lawful interest was received by appellee during the year between August 5, 1930, and August 5, 1931.

We think it also clear that the payments were made to appellee, and, while appellee fails to specify the dates such payments were made, she explains her inability to do so and calls upon appellee to produce its records as to such payments.

Another proposition advanced by appellee is that we erred in holding that, because appellee's petition showed that a part of the payments were to be applied to the payment of stock, it made the contract usurious. Appellee, under this proposition, calls our attention to certain articles of the statutes relative to building and loan associations, and asserts that the scheme which we denounce is one expressly provided for in those articles.

As will be noted in the pleading quoted in the original opinion, appellant alleged that she was required to take out numerous shares of stock and to make payments on them, when it was never intended that she should share any dividends as a stockholder or receive benefits thereby, but that, under the guise of paying for stock and shares and for her being a member, such payments were intended really for the use of the money and its detention.

These allegations must be taken as true, and, while it might develop on the trial of the case that she was to benefit by such stock payments as provided by the statutes cited by appellee, yet, in judging her pleading, we must accept her allegation that no benefit was to come to her by virtue of such payments.

Appellant, in paragraph 7 of her answer and cross-action, pleaded that appellee and Shannahan were working together; that Shannahan was aiding appellee to get loans, and that appellee, in turn, was requiring improvements to be made on the property on which it was making loans, and having Shannahan do the work; that appellee, under the contract appellant was required to make with Shannahan, was to supervise the work and stop Shannahan whenever sufficient improvements had been made to meet its requirements.

These facts were sufficient to show that appellee had notice of the terms of the agreement between appellant and Shannahan and in fact show that it was a party to that agreement. We fail to see how appellee, under the allegations, could be a holder in due course of the Shannahan note as is insisted by it.

The motion for rehearing is overruled.