John D. Paschall et al. v. Pioneer Savings and Loan Company.

Delivered May 7, 1898.

1. Homestead—Lien—Contract for Erection—Wife Not Estopped.

One who has entered into a valid contract with a husband and wife to erect a residence on their homestead does not acquire a lien as against the wife, where a failure of substantial performance is due to his fault and that of the husband, and the wife does not consent to or accept the house as constructed, although she occupies it with her husband, and a portion of the money contracted to be expended on the house was, with her acquiesence, diverted to the payment of vendor's lien notes and other expenses.

2. Same—Application of Payments.

Payments made by owners of a homestead lot to a contractor for the erection of a residence thereon, in excess of the amount expended by such contractor in paying off vendor's lien notes against the lot, will in equity be applied to the cancellation of such notes and to the extinguishment of any claim of the contractor by having so paid them, instead of being applied on the contract price, where the contractor had not acquired a lien on the lot because of his failure to perform the work according to the contract.

Appeal from Dallas. Tried below before Hon. W. J. J. Smith.

Harris, Etheridge & Knight, for appellants.

Morris & Crow, for appellee.

RAINEY, Associate Justice.—Appellants were sued by appellee to recover the balance due on a note for $1500 given by John D. Paschall, and to foreclose a lien upon the land in suit herein, which was the homestead of appellants. Appellee recovered judgment against John D. Paschall for $860.65, and a foreclosure of the lien as to $390.42 of said amount.

Conclusions of Fact.—This cause was submitted upon an agreed statement of the facts and issues of law, as follows:

"In addition to the findings of the jury upon special issues submitted to them by the court, as is set forth at large in the judgment rendered herein, and which is made a part hereof, the following are the facts:

1. "Plaintiff and said union pleaded and proved that they had obtained a permit to do business in the State of Texas.

2. "The premises in controversy were on and prior to December 2,

1889, the homestead of the defendants, they having no other homestead, nor any other homestead lot.

3. "The defendants and the plaintiff's predecessor, the said union, entered into a contract with defendants, whereby it was agreed that for and in consideration of the note declared upon by the plaintiff in this case, the plaintiff's said predecessor would erect, build, and complete for them a residence upon the lot of ground described in the judgment herein, and that in the erection and completion thereof it should expend $1500, and that said residence should have when completed a cash value of at least $1300. The same was to be two stories high, was to contain seven rooms and a bath room, was to be finished with native pine, was to have four mantels, and was to be 34x45 feet.

4. "Plaintiff's said predecessor, the said union, did not expend $1500 in the erection of said residence, but it did, subsequent to the entering into of said contract, expend the sum of $944.89, as found by the jury, and it did pay off valid vendor's lien notes against the lot, aggregating the sum of $279.06. The house which was actually constructed contained no bath room, and contained but one mantel, and contained only three rooms down stairs, and the second story was merely floored, without being partitioned or otherwise completed, and the same, when completed, was not worth exceeding $900, and the defendant, Allie Paschall, testified that she would not have consented to enter into a contract for the building of the house which in fact was built.

5. "The payments made by the defendants are in excess of the amount of the vendor's lien notes paid off by the said union.

6. "The said contract so entered into by and between the said union and the defendants was drawn and executed in accordance with the Constitution and laws of the State of Texas relating to the fixing of a lien upon a homestead, and was such that if the said union had performed its said contract substantially, that its lien as claimed would have existed for labor and material expended in its improvement and prior to the date when the said labor and material were furnished.

7. "And the failure to comply with said contract arises upon a state of facts as follows: After the lien contract was entered into as required by law by husband and wife for the improvement of the homestead, the said union through its subcontractor, Charles Robbins, expended $944.89 for labor and material used in erecting said residence, and the remainder of the $1500 was expended in expense of procuring the lien, interest, and premiums in advances, stock dues, fees and assessments, insurance on said property, and other improvements as they appear herein in an itemized statement, all of which were paid and retained with the knowledge of defendants and with the consent of John D. Paschall and by the acquiescence of Allie Paschall, since she at the time made no complaint to plaintiff or to said union, and defendants received and took possession of said house and have since continuously used and occupied it as their home, without complaint made to plaintiff that it did not keep and perform its said contract, until after the filing of this suit.

"It is understood and agreed, however, that the stipulations herein contained as to the facts proven are in nowise to militate against or modify the findings of the jury upon the special issues submitted to them, as such findings and special issues are embodied in the judgment. There are but two questions for decision in this case, and one of them is this: (1) the said union having contracted with the defendants to erect upon their homestead lot a residence of given dimensions and of given value, and by its own fault failed to substantially perform its contract in that respect, did it acquire a lien for its partial performance of the contract, when the failure to so perform it was due to its own fault? In other words, can there be a lien against the homestead as against the married woman upon a quantum meruit, where the failure of substantial performance is due to the fault of the contractor? If the said union acquired no lien, by reason of its failure to substantially comply with its contract, then the remaining question for decision is this: (2) 'The defendants having made payments to the said union in excess of the amount expended by the said union in paying off the vendor's lien notes, will such payments be in equity appropriated to the extinguishment of any claim the said union may have by reason of its having paid off said vendor's lien notes? If the said union, by reason of its failure to substantially comply with the contract, did not acquire a lien upon the homestead of the defendants, and if the payments made by the defendants are to be appropriated to the extinguishment of the claim of the said union for having paid off the vendor's lien notes, then and in that event the judgment shall be reversed and rendered denying any foreclosure, but in the event that said union did acquire a lien under the facts stated, and in the event that under the facts stated the payments of the defendants will not be appropriated to the extinguishment of the claim of the union for having paid off the vendor's lien notes, then the judgment is to be affirmed.'

"And these are the only issues to be submitted on this appeal, other matters being waived: First, did said union, or plaintiff, acquire a lien for the $944.89 expended for labor and material used in improving defendants' homestead under the facts in this case; and second, if plaintiff has no such lien, will the payments made be applied first to satisfy the vendor's lien? And if plaintiff has a lien for the amount expended for labor and material as stated, the judgment is to be affirmed."

The special findings of the jury above alluded to are as follows:

"(1) You are requested to find from the evidence whether or not the union when it entered into its contract with Charles Robbins actually intended to pay him $1500, or a less sum. Answer. We do not think that the union intended to pay Robbins $1500.

"(2) You are requested to find whether or not the union did or did not perform its contract with defendants for the erection of said residence, and if it did not, then to whose fault was such failure due? Was it the fault of the union or of defendants? Answer. The union did not per-

form its contract with defendants. It was the fault of the union that the contract was not complied with."

*Opinion.*—Only two questions arise under the facts in this case as presented. The first is: Does a party who has entered into a valid contract with the husband and wife to erect a residence upon their homestead acquire a lien thereon when there has been a partial but not a substantial performance thereof, and the failure to perform was due to his own fault? We are of the opinion that this question should be answered in the negative.

Under the Constitution and statutes of this State, a valid lien can be created upon the homestead to secure the payment of money obtained for improving the same, where such money is expended in making such improvements, and the statutory prerequisites in entering into the contract are complied with. The contract in this case was valid, and would have been enforced had there been a substantial compliance therewith. Lippencott v. York, 86 Texas, 276; Lignoski v. Cooker, 86 Texas, 324; Savings and Loan Co. v. Everhart, 44 S. W. Rep., 885.

In this case on former appeal (34 Southwestern Reporter, 1001), we used the following language: "The amount of money expended in the construction of such building, and in the material procured therefor, was a valid contract lien, and to that extent the lien under the contract should have been enforced against the property." The question here raised was not presented at that time, and the same was not considered; therefore, the language quoted is not applicable to the phase of the case as now presented.

By a long line of decisions in this State, it is well settled that in order to recover on a contract there must have been at least a substantial performance thereof by the party seeking a recovery thereon, or show that performance was prevented by the other party. When there has been partial performance and an acceptance of the benefits, if any, arising therefrom by the other party, then a recovery can be had for a quantum meruit; not by force of the contract but independent thereof. Gonzales v. McHugh, 21 Texas, 257; City of Sherman v. Connor, 88 Texas, 36.; Childress v. Smith, 90 Texas, 610.

In the case of City of Sherman v. Connor, supra, which is followed by Childress v. Smith, supra, there was a failure on the part of Connor and associate to comply with a contract made with the city to construct waterworks. There was only a partial performance of the contract, the failure to substantially comply therewith being attributable to his fault, but the city took possession of the waterworks. In passing upon their right to recover, the court says: "Not having performed the contract they could not maintain an action thereon for the contract price or any part thereof. They having, however, constructed a system of waterworks, of which the city has taken possession, are entitled to recover the reasonable value thereof upon an *implied* contract of the city to pay therefor."

Mr. Phillips in his excellent work on Mechanic's Liens, section 134,

uses the following language: "A substantial performance, according to the terms and conditions agreed upon, is a condition precedent to the builder's right to maintain an action under the mechanic's lien law. Everyone has a right to build his house, cottage, or store after such model and in such style as shall best accord with his notions of utility or be most agreeable to his fancy. The specifications of the contract become the law between the parties until voluntarily changed. If the owner, having regard to strength and durability, has contracted for walls of specified materials, to be laid in a particular manner, or for a given number of joists and beams, the builder has no right to substitute his own judgment or that of others. Having departed from the agreement, if performance has not been waived by the other party, the law will not allow him to allege that he has made as good a building as the one he engaged to erect. He can demand payment only upon and according to the terms of his contract; and if the conditions upon which payment be due have not been performed, then the right to demand it does not exist."

It is clear that the plaintiff failed to substantially comply with the contract to build a house, and consequently it is, under the foregoing authorities, not entitled to a recovery on the contract, but entitled to a recovery upon an implied contract. Not being entitled to recover on the contract, there is no basis for a lien against the homestead, consequently a judgment for foreclosure was not authorized.

It is insisted by defendant in error that the husband agreed to and the wife acquiesced in the diversion of the funds, and took possession of and used the house, and are therefore not in a position to claim that no lien existed for the amount actually expended on improvements.

The defendant in error entered into a contract to build plaintiffs in error a house for so much money, for which amount a note was executed. Defendant in error will not be relieved from complying with its contract because there was an agreement with the husband that it might divert some of the money for other uses, although acquiesced in by the wife. The wife testified that she never consented to the house as constructed, and her evidence is not contradicted, and she is not estopped by acquiescing in the diversion of the funds. Nor is she estopped by having occupied the house. Phil. on Mech. Liens, sec. 106. The house was on the homestead lot, and when defendant in error failed to complete it as per the contract the lien was lost, and the acts of the wife in occupying it with her husband could not affect the status of the lien. Phil. on Mech. Liens, sec. 137.

The other issue raised is stated by plaintiffs in error as follows: "The plaintiffs in error having made payments to the said union (the predecessor or assignor of defendant in error) in excess of the amount expended by the said union in paying off the vendor's lien notes, will such payments be in equity appropriated to the extinguishment of any claim the said union may have by reason of its having paid off said vendor's lien notes?"

It is a general rule of equity that in the application of payments on an indebtedness, where the courts are called upon to make the application, the debtor will be favored and the payment applied to the debt most onerous to him. Applying this rule, we think the court erred in not applying the payments to the cancellation of the vendor's lien notes held by defendant in error. Wingate v. Loan Co., 39 S. W. Rep., 999.

There is no controversy about the amount of the judgment. To that extent, it is affirmed as to John D. Paschall; and as to that part foreclosing a lien, it is reversed and rendered for plaintiffs in error.

*Affirmed in part.*
*Reversed and rendered in part.*