**STOUT v. SOMMERS et al.**

No. 8438.

Court of Civil Appeals of Texas. San Antonio.
May 7, 1930.

Rehearing Denied May 28, 1930.

John P. Pfeiffer, of San Antonio, for appellant.

Terrell, Davis, McMillan & Hall, of San Antonio, for appellees.

FLY, J.

Appellant instituted this action against Jake W. Sommers and Grace Sommers, his wife, appellees herein, to secure the appointment of a receiver for certain improvements, and the land on which they are situated, in the city of San Antonio, during pendency of the suit, and for judgment for his debt as evidenced by a certain note for $3,200, executed to Chas. H. Baxter, and to foreclose a mechanic's lien on the premises. Appellees answered setting up homestead rights in the land and filed a cross-action against appellant, Charles H. Baxter and Ray W. Marshall, for cancellation of the note given by them to said Baxter and by him assigned to appellant, and it was alleged that Ray Marshall was made a party to the cross-action by reason of his being the trustee in a deed of trust given by appellees to Charles H. Baxter to secure the debt evidenced by the promissory note. In the alternative appellees prayed for a judgment against Baxter in any sum recovered against them by appellant. The cause was submitted to a jury on special issues and on the responses thereto judgment was rendered that the note for $3,200 be canceled, that the cloud cast upon the title to appellees' property by the execution and filing of the mechanic's lien and deed of trust be removed, and appellant divested of all right, title, interest, or claim arising from the execution and filing of said instruments. Charles H. Baxter, not having been cited,

was by agreement of all the parties dismissed from the suit. It is also recited in the judgment that appellees at the request of Charles H. Baxter had conveyed to Eva Baxter lot 37, block 6, section A., Temple Hill addition which was accepted by said Charles H. Baxter as the equivalent of $1,000 in cash to be applied on the contract for the erection of the improvements described in the petition, and the court established an equitable title in the improvements erected on the property described in the petition, and that by reason of the failure of Charles H. Baxter to erect the improvements provided for in the contract, appellees are entitled to said lien for $1,000, and the lien was foreclosed on the improvements and a sale of the improvements was provided for.

The jury answered that the lot on which the improvements were made was at the time of the execution and delivery of the note, mechanic's lien contract and deed of trust in favor of Charles H. Baxter, the homestead of Jake W. Sommers and Grace Sommers, and that Baxter did not erect the improvements provided for in the building contract. These answers were all that were made by the jury.

The evidence shows that Baxter entered into a contract with appellees whereby he agreed, for a consideration of $4,200, of which $1,000 was considered a cash payment, and a note for $3,200, which was to be paid in monthly installments, to erect certain improvements on a certain tract or parcel of land in Bexar county, being a part of 943 acres out of original survey 22, in the name of Ascensio Estrada, near San Antonio, and to secure the note a mechanic's lien was given on the property and a building contract was entered into between appellees and Baxter, and a deed of trust on the land was also given by appellees to secure the payment of the note, Ray Marshall being the trustee. Baxter built the residence on the land and after an inspection of the house appellees moved into it. Baxter testified that defects pointed out by appellees were rectified by him and accepted by appellees, they denied this.

Mrs. Sommers swore that she and her husband made the building contract and executed the mechanic's lien and deed of trust on the lot described to secure the contract price for the improvements. They were living in their home on Montrose avenue in Temple Hill addition. That property was their homestead when they executed the instruments, but they expected to live in the new house when completed as their home. She swore that the house was not completed according to the plans and specifications. The front floor was not thirty inches from the ground, but only twenty-six inches. The floors were sandpapered and the sawdust flew over the paint; the fireplace had cracks in it so you could

put your fingers between the bricks and a two by four piece of lumber was put in the arch which prevented a fire being built in the fireplace. The buffet was not built in the place where she wanted it and there was no mirror in it. One of the doors did not fit, being even with the floor when shut and leaving a space between it and the floor when open. Some of the boards on the kitchen floor were higher than others and cut the linoleum. The wall paper was not matched and did not come to the edges of the window sills or the door facings. The baseboard in the children's room is not matched properly, and it is patched and there is a raw edge that shows from the front door. The windows rattle when the wind blows and they do not fit properly. The doors were rough and splintered. The breakfast nook was too small and there was a board in the wall of the dining room with a knothole in it. There was no pantry. There is a rotten rafter in back of the house. The French doors would not close. The weather boarding curves in and the floors shake when you walk over them. The $1,000 cash payment was the equity held by appellees in the old home, which was not paid for, only to the extent of $1,700; the sum of $4,326.79 being still due on the purchase money. Contemporaneously with the execution of the building contract and the liens herein mentioned, appellees sold and conveyed to Eva Baxter the old home on which they had paid $1,700 and owed $4,400 more. On March 29, 1927, Eva Baxter conveyed the land to Adolph Wagner who held the vendor's lien for the purchase money not paid by appellees. She had nothing to sell except the $1,700 equity sold to her by appellees.

We believe the jury correctly found that at the time the instruments were executed by appellees the premises upon which the improvements were to be erected was their homestead. On the same date appellees entered into the contract to build the improvements on the lot on which they were afterwards erected, appellees conveyed to Eva Baxter the home in which they were living and at once began paying rent in the sum of $40 per month, or continued to pay interest to Wagner their vendor. They swore, and were not contradicted, that they intended to make the new place their home. It is claimed by appellant that the deed was not executed until August 10, 1926, but the record shows it was executed on August 4, 1926, was acknowledged on August 10, and filed for record on February 16, 1927. The old homestead was abandoned on August 4, 1926, contemporaneously with the execution of the note, mechanic's lien, and deed of trust. The circumstances of the note, building contract, and deed of trust being executed by appellees were sufficient to put appellant upon inquiry as to that the house was intended to be used as a home. He had constructive notice that appellees had only a small equity in the place where they resided as compared with the purchase price. By simply asking appellees he could have ascertained their intention to use the new house as their home.

The first proposition states that "where the parties have expressed their agreement in writing and the terms thereof are unambiguous, the same is conclusive and will supersede all prior agreements or stipulations, unless the instrument is set aside for some equitable reason." The proposition is too general and abstract to be considered, but if it had been in all respects according to the rules, it could not be sustained because there was, as shown by the bill of exception, merely an objection to certain questions propounded to Grace Sommers, but fails to show that she made any answer to the questions or what the answers were. There is no basis for the second and third assignments of error nor the proposition thereunder.

The second proposition is abstract in the extreme and the assignments four, five, and six are as general and inconclusive as the proposition. As said by this court, through Associate Justice Smith, in Benavides v. Garcia, 283 S. W. 611, 614: "The office of an assignment of error is to point out the specific ruling of the trial court at which the complaining party is aggrieved, and the function of propositions under such assignment is to state the reasons why such specific ruling is erroneous." However, it may be stated that two of the bills of exceptions to the argument show that the court stopped the argument of counsel for appellees and instructed the jury not to consider it, and the other argument complained of was a direct reply to arguments made by the attorney for appellant.

While proposition three is abstract, still, when considered in the light of assignments of error one and eighteen, on which it is based, it shows that appellant insists that when appellees went into possession of the house they could not raise any objections to the manner of construction, under the terms of the following clause from the building contract: "It is specially agreed that the entering by the party of the first part into possession of said improvements or the acknowledgment by the party of the first part of the completion of the contract, as well as any other sufficient proof, shall be conclusive evidence that all duties and obligations of party of the second part have been fully and completely performed." The evidence indicates that appellees went into the building with a full knowledge of the failure to perform the labor according to the plans and specifications and they would be bound by the contract, unless it could be shown that they were caused to move into the building by the fraud or concealment of Baxter or appellant. If the defects

were concealed or if appellees were led to occupy the building through fraudulent representations, they would not be bound by the clause. They willingly signed the contract, fully understanding it, and, in the absence of fraud or concealment, they should be bound by it. The clause of the contract is conclusive as to acceptance of the house by appellees, as evidenced by taking possession of it, and they could not destroy the effect of the contract by any intention formed by them at the time of occupying it. If, as claimed by them, they merely moved into the house to preserve it from injury or destruction, they should have informed Baxter of that fact, but they did not do so. They may not have intended to waive defects in the construction, as found by the jury, but they could not by their intention destroy their contract.

 If it be admitted, as said by appellees, that it is well established that a valid lien upon a homestead can be fixed only by the substantial completion of a contract executed at the time and in the manner required by law, still we do not think either or all of the defects sworn to showed a failure to substantially complete the structure in view of evidence tending to show that the defects could have been cured by an expenditure of $200 or $250, which appellant offered to pay. Even if it required $1,600, as a carpenter swore it would, to complete the house, still we do not believe, either in law or equity, appellees could confiscate and appropriate the material of the contractor, and take possession and use the house erected by him, without paying a dollar on the note executed by them. The court not only permitted this but actually sought to return to them the $1,000 paid on the house in advance. Undoubtedly homestead rights should be protected but not at the expense of fair dealing and upright conduct.

 Baxter did not forfeit all his rights by leaving windows so they rattled, doors so they did not fit, the buffet without a mirror, or even leaving some of the posts unplaced that should have been put under the house. He should be compelled to remedy the defects, which did not prevent appellees from making the house their home, but not to lose everything on account of defects that could be remedied by the payment of amounts much less than the cost of the house. Not only does the judgment in this case give the house free of cost to appellees, but in the absence of Baxter and Wagner as parties to the suit, foreclosed a lien on the old homestead for the $1,000 equity used as a payment on the house. The cases of Murphy v. Williams, 103 Tex. 155, 124 S. W. 900; Paschall v. Loan Co., 19 Tex. Civ. App. 102, 47 S. W. 98, 100; Ward v. Hamilton (Tex. Civ. App.) 251 S. W. 819; Fairmont Creamery Co. v. Minter (Tex. Civ.

App.) 274 S. W. 281; and Blum Milling Co. v. Grain Co. (Tex. Com. App.) 277 S. W. 78, do not sustain the judgment under the facts of this case. The cited cases of Fairmont Creamery Co. v. Minter and Blum Milling Co. v. Grain Co. have no applicability whatever to this case. The case of Murphy v. Williams was in regard to a house only partly erected and then abandoned by the contractor, and there was no substantial compliance with the contract. In the case of Paschall v. Loan Co. there was only a partial performance of the contract, the upper story being incomplete, as well as many essentials in the lower story. There was no waiver as to performance by the owners of the land. The court said: "When there has been partial performance and an acceptance of the benefits, if any, arising therefrom by the other party, then a recovery can be had for a quantum meruit." In Ward v. Hamilton it was merely held that the owners by taking possession of a house defectively constructed did not thereby waive the right to recover damages. Although appellees claim there were defects in the house, they have not done a single thing to remedy them but are renting the place and collecting the rent.

 On another trial appellees should not be permitted to vary the terms of the written contract by parol testimony.

The judgment is reversed, and the cause remanded.