**MAGEE et ux.**

**v.**

**I. & G. N. WOOD & COAL CO.**

No. 12566.

Court of Civil Appeals of Texas.

San Antonio.

April 22, 1954.

Rehearing Denied May 19, 1954.

Forrest A. Bennett, Remy, Burns, & Schiller, San Antonio, for appellants.

Herbert Oliver, W. W. Palmer, Edward W. Penshorn, San Antonio, for appellee.

NORVELL, Justice.

This is a suit for judgment upon a promissory note with a foreclosure of a materialman's and mechanic's lien against a homestead. The note was for the principal sum of $10,447, dated May 10, 1950, and due on or before 120 days after date. It was executed by Joseph P. Magee, Jr., and Wanda F. Magee, and payable to the order of P. H. Blank and D. M. Cude.

On May 10, 1950, Magee and wife also entered into a materialman's and mechanic's lien contract, hereinafter more fully described, wherein it was agreed that Blank and Cude should construct a dwelling house upon lots owned by the Magees, according to certain plans and specifications and that in return therefor, the Magees would pay to Blank and Cude the sum of $10,447.00, represented by the note. A deed of trust lien was also given to secure the payment of this note. The note, materialman's and mechanic's lien and deed of trust lien were all transferred to I. and G. N. Wood and Coal Company, by written assignment, bearing date of June 2, 1950. The note was also indorsed by Blank and Cude.

It appears that as the work progressed upon the dwelling house called for in the materialman's and mechanic's lien contract, I. and G. N. Wood and Coal Company furnished materials and advanced monies to meet the payrolls of Blank and Cude.

The case was tried to a jury upon special issues, many of which inquire about matters concerning which there was no dispute in the evidence. Such findings of the jury as are necessary to an understanding of our disposition of the case are as follows:

Question No. 5: Do you find from a preponderance of the evidence that P. H. Blank and D. N. Cude constructed improvements on the land of Joseph P. Magee, Jr., and wife, Wanda F. Magee, in substantial compliance with the plans and specifications in question? Answer: No.

Question No. 6: Do you find from a preponderance of the evidence that in building the house that deviations from the plans and specifications were orally agreed to by the defendant, Joseph P. Magee, Jr.? Answer: No.

Question No. 9: Do you find from a preponderance of the evidence that the construction of the house in question was performed in a workmanlike manner? Answer: No.

Question No. 12: Do you find from a preponderance of the evidence that the house built by Blank and Cude for the Magees can be remedied to comply with the plans and specifications? Answer: No.

The jury also found that I. and G. N. Wood and Coal Company had advanced to Blank and Cude the sum of $6,000 for labor, and material worth $3,300, in connection with the construction on the Magee property (Special Issue No. 7); that the reasonable cash value of the house actually constructed, exclusive of the value of the.

land, was $12,000 (Special Issues Nos. 8 and 14), and that had the house been constructed according to the plans and specifications agreed upon it would have been worth $17,000 (Special Issue No. 15). (It appears that a substantial portion of the building materials used was furnished directly by appellants.) The jury also failed to find from a preponderance of the evidence "that the I. and G. N. Wood and Coal Company, aside from furnishing materials, were working together with Blank and Cude in the actual construction of the house in question" (Special Issue No. 16).

Upon these findings the trial court rendered judgment as follows:

· (a) In favor of I. and G. N. Wood and Coal Company and against Joseph P. Magee, Jr., and Wanda F. Magee, as makers and against P. H. Blank and D. N. Cude as indorsers, for the full amount of the note sued upon, together with accrued interest thereon amounting to $12,707.61.

(b) Foreclosing the materialman's and mechanic's lien and deed of trust lien against the property insofar as the sum of $9,300 was concerned. (The description of the property was also corrected, but there is no dispute as to this action.)

(c) Providing that if Blank and Cude were required to pay any part of the judgment rendered against them and against the Magees, they should recover over and against the Magees for such sums, not to exceed the sum of $4,300, however.

(d) Providing for the recovery of $1,077.95 attorney's fees as provided by the note.

Joseph P. Magee, Jr., and wife, Wanda F. Magee, will be referred to as appellants; I. and G. N. Wood and Coal Company, as appellee, while Blank and Cude will be referred to by name.

■ Appellants contend that the court erred in allowing appellee to recover on the note, as the same was not a negotiable instrument, and that, in the alternative, appellee failed to plead that it was an in-

nocent purchaser for value thereof. Discussing first, the question of pleading, it appears that a copy of the note was attached to the trial petition and although the allegations of the pleadings are not in the usual form employed in asserting the claim of innocent purchaser, we are of the opinion that they are sufficient. Under the provisions of the Negotiable Instruments Act, Article 5935, § 59, Vernon's Ann.Civ. Stats., "every holder is deemed prima facie to be a holder in due course", and it appears that an issue seeking to overthrow this presumption was actually submitted to the jury—Special Issue No. 16, above mentioned.

The contention that the note was not negotiable is based upon the fact that it contained the following recitation:

"Payment hereof is secured by builder's and mechanic's lien and deed of trust lien upon the following described real estate in Bexar County, Texas, to-wit:

"Lots 20 and 21, Block 3, Oakland Estates, an addition to the City of San Antonio, Bexar County, Texas, according to plat thereof recorded in Vol. 980, page 281, Plat Records of Bexar County, Texas.

"This note is given in part payment of lumber, building material and labor to be furnished by the payees, in accordance with the contract of even date herewith, same to be used in the construction of certain improvements for the makers hereof on the above described premises and property." (The block number should have been 6 rather than 3, and the description was corrected by the court in the decree, as heretofore indicated.)

The Negotiable Instruments Act, Article 5932, § 3, provides that "An unqualified order or promise to pay is unconditional within the meaning of this Act, though coupled with: * * * 2. A statement of the transaction which gives rise to the instrument; * * *." This statutory provision was considered in connection with

a contractual clause similar to that involved here, in Continental Nat. Bank of Ft. Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928, and upon authority of that case we hold that the instrument sued upon was a negotiable instrument and that there was no error in awarding appellee judgment thereon for principal, interest and attorney's fees.

■ A different question, however, is presented as to the validity of the lien asserted against the homestead. Ordinarily, one recovering upon a note is also entitled to foreclosure of the lien securing payment thereof, as illustrated by the case cited. However, a distinction must be drawn when Article 16, § 50, of the Constitution, Vernon's Ann.St., is involved. As pointed out in Murphy v. Williams, 103 Tex. 155, 124 S.W. 900, 902, an innocent purchaser of notes "would be entitled to the benefit of any lien that might exist on the homestead to secure them, but whether or not such a lien exists must depend upon the effect which the law gives to the contract for the improvement and what was done under it. No such lien can exist on the homestead without compliance with the constitutional provision."

In order to make clear the respective positions of the parties, certain occurrences which took place in the court below should be mentioned. Appellee's first amended original petition declared upon the note, materialman's and mechanic's lien and deed of trust lien. It was alleged that Blank and Cude, in accordance with their contract with appellants, "constructed said improvements, furnished the necessary labor and materials and in every respect complied with said contract." Appellants answered by affirmatively pleading that Blank and Cude failed to comply with the plans and specifications agreed upon by the parties and contended the contract was not substantially performed.

During the course of the trial, appellee was allowed to amend its petition and there is much dispute as to the effect thereof. We therefore set out the pertinent parts thereof:

"That in the building and construction of the house by the defendants Blank and Cude for the defendants, Joseph P. Magee, Jr., and wife, Wanda Magee, this plaintiff expended therefor in labor and material the sum of $10,360.19, divided thus: $3,854.92 for materials and $6,505.27 cash for payrolls; that the actual reasonable cash market value of the materials so furnished was the sum above charged and the actual cash paid for labor in the construction of said house was of the reasonable value of the sum above set forth, and that the aggregate of the above two items is the sum of $10,360.19.

"Plaintiff sayd that in the event, for any reason, it should not be entitled to recover on its note, then plaintiff sayd it is entitled to recover judgment against the defendants Magees and that they are bound and liable to this plaintiff for said sum of $10,360.19."

If this pleading be construed as setting up a quantum meruit count and nothing more, then the asserted lien is patently invalid.

Article 16, § 50, of the Constitution provides that:

"The homestead of a family shall be, and is hereby protected from forced sale, for the payment of all debts except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, * * *."

■ In the face of jury findings to the effect that there was no substantial compliance with the contract; that the construction of the house was not performed in a workmanlike manner, and that the defects in the house can not be remedied to comply with the plans and specifications contained in the contract, there can be no recovery on the written agreement. It is elementary law that "there is an obligation

to perform substantially a building or construction contract according to the terms of the agreement before a party can have any right of action." 9 Am.Jur. 22, Building and Construction Contracts, § 31.

Similarly, no recovery can be had upon a quantum meruit basis. In Murphy v. Williams, 103 Tex. 155, 124 S.W. 900, the Supreme Court said:

> "The Constitution does not prescribe the form or substance of the contract further than stated, but when it. says that a contract must be made for the work and material, and that the lien is to be for an improvement thereon, it plainly contemplates that the improvement, or the work and material, as the case may be, that is furnished, must be in substance that which has previously been agreed upon; and it follows that this is not met by an agreement for a house of a specified construction, and the furnishing of only part of the work and material entering into such construction. Williams bought the notes before the contract was performed, and his lien depended upon the performance either by Arend or himself of that which Arend had undertaken to do to create or perfect it. With respect to it his position is no better than Arend's would be."

It is difficult to make more of the trial amendment than a mere quantum meruit count. The trial judge, however, considered it as invoking a contractual provision contained in the materialman's and mechanic's lien contract which was attached as an exhibit to the first amended original petition.

A form was used in preparing the contract, and the following appears in the printed portion thereof:

> "It is further expressly understood and agreed that should the improvements herein contracted for fail for any reason to be completed according to the agreement between the parties hereto, or should all of the material and labor to be used in the erection thereof fail to be provided by second party, nevertheless second party or other holder of said indebtedness shall have a valid and subsisting lien as above set out for the full amount of said indebtedness less such amount as would be reasonably necessary to complete said improvements according to the agreement between the parties hereto, *or to the full extent of the materials and labor actually furnished and placed upon the above described property, whichever shall be the larger amount;* and provided further that should said improvements fail to be completed according to the agreement between the parties hereto, then any assignee and holder of said indebtedness and liens shall have the preference right and option to complete said improvements according to the agreement between the parties hereto, in behalf of second party, and when said improvements are so completed the liens as above set out shall be perfected for the full amount of said indebtedness." (Italics indicate the particular clause involved.)

The clause in the contract above set out does not alter the legal situation. The constitution provides that a recovery for work and material used in constructing improvements upon a homestead may be had only "when the work and material are contracted for *in writing*". Article 16, § 50, of the Constitution. "The essential conditions or statement of the contract should be included in the written instrument." Harrop v. National Loan & Inv. Co., Tex.Civ.App., 204 S.W. 878, 880, and "the contract must in some fashion describe the nature of the improvement and specify the cost of work to be done and the character of material to be supplied thereunder. One of the objects of the requirement as to the joinder of the wife is the apprising her of the character and cost of the improvement." 22 Tex.Jur. 318, Homesteads, § 221. Essentially the question is whether a recovery on quantum meruit is a recovery upon a written contract. It is claimed that a recovery upon a quantum meruit basis

can be considered at the same time as a recovery upon the necessary written contract, because the written contract contains a clause which states that in the event of non-performance of the contract a recovery nevertheless may be awarded "to the full extent of the material and labor actually furnished and placed upon the * * * property." The contract states that a builder may recover under its written terms and stipulations, but in the event he can not so recover he may in effect recover upon quantum meruit. This raises the question of whether a contractual stipulation that one may recover upon quantum meruit, so to speak, is sufficient to meet the constitutional requirements for a written contract. We think not. It would be like a contract which provided that, "This is a *written contract* by which the parties hereto agree in writing that the home owner shall pay for all work and materials hereafter agreed upon *orally* and not in writing and the home owner further agrees *in writing* that the specifications and plans for the construction will be agreed upon in the future *orally* and not in writing." A contract is either in writing or not in writing. Recovery on a construction job is either by reason of a written contract or an unwritten one. Quantum meruit recovery is a recovery other than upon a written contract.

The right to recover on a quantum meruit in case of a partial performance is not by force of the contract but independent of it. Childress v. Smith, 90 Tex. 610, 38 S.W. 518, 40 S.W. 389, reversing Childress v. Smith, Tex.Civ.App., 37 S.W. 1076; Paschall v. Pioneer Savings & Loan Ass'n, 19 Tex.Civ.App. 102, 47 S.W. 98; 10 Tex.Jur. 410, Contracts, § 235; 17 C.J.S., Contracts, § 569, p. 1203.

For the builder to recover he must prove under the Constitution that he has a written contract. Recovery under a theory of quantum meruit is an abandonment of a theory of recovery on a written contract. Therefore, there is no recovery under a written contract.

The clause purporting to allow the holder of the indebtedness to recover "to the full extent of the materials and labor actually furnished and placed upon the above described property" is, standing by itself, patently invalid when tested by the constitutional provision. Considered in connection with its context, it is in the nature of a "joker." It appears alongside of and, to a certain extent, intermingled with a legitimate clause providing for a recovery of the contract price, less the amount necessary to complete the work when the contractor makes default. Harrop v. National Loan & Inv. Co., Tex.Civ.App., 204 S.W. 878. The validity of this latter provision has been repeatedly upheld, as the owner of the property under such formula gets what he contracted for at the price he agreed to pay. In this case, however, we have a judgment fixing and foreclosing a lien against a homestead to pay for a house which the appellants never contracted to buy and constructed of materials which they did not contract to use, and constructed in a manner not contractually acceptable to them. "It is hard to see how one who has done work or furnished materials without any contractual right to compensation can be entitled to recover from a defendant who has been guilty of no fault, a sum in excess both of what he contracted to pay and of any benefit which he has received." 5 Williston on Contracts 4149, § 1485. A clause which is invalid when considered standing alone, certainly can not be given the effect of overriding and dominating every other provision of the contract.

■ It is a cardinal rule of construction that, "an agreement should be interpreted as a whole and the meaning gathered from the entire content, and not from particular words, phrases, or clauses." 12 Am.Jur. 772, Contracts, § 241. It appears that the contract here involved, among other things, provides that, "Second Party (Blank and Cude), for the considerations hereinafter mentioned (a note for $10,447.00), covenants and agrees to furnish and supply all Material and Labor to be used in the construction and erection of certain im-

provements, *which second party hereby contracts and agrees to build, construct and complete, for first party, in accordance with plans and specifications heretofore agreed upon by and between the parties hereto, and now identified, said plans and specifications hereby referred to and made part hereof as fully as if written herein, attached hereto, or set out in detail in this contract, \* \* \*."* This provision of the contract was not carried out. Are we now to say that it was rendered wholly ineffective by reason of a trick clause buried within the printed from? Are we to set aside matters of the essence of a building contract—plans and specifications—and give predominance to a strained construction of a particular clause which would render the agreement unilateral in effect? We think there is no sound precedent for such construction.

The case of Harrop v. National Loan & Inv. Co., Tex.Civ.App., 204 S.W. 878, 881, does not support appellee's position. The clause there involved reads as follows:

" 'That a failure to complete the improvements herein contracted for shall not defeat such indebtedness and lien, but in such event the indebtedness and lien upon said premises and improvements shall exist in favor of said contractor, his heirs and assigns, for said contract price, less such amount as would be reasonably necessary to complete said improvements according to said plans and specifications.' "

As heretofore pointed out, under this clause, the contracting owner is entitled to receive what he contracted for at a price which he agreed to pay. Practically all of the authorities cited by appellee in support of its position are in accord with the Harrop case and construe the identical or a similar contractual provision. Robinson v. Leach, Tex.Civ.App., 237 S.W.2d 366; Galbraith-Foxworth Lumber Co. v. Long, Tex.Civ.App., 5 S.W.2d 162; North American Building & Loan Ass'n v. Bell, Tex.Civ.App., 88 S.W.2d 633.

Appellee places particular emphasis upon the last case cited, and upon a superficial examination it might appear to afford some support to appellee's position. A careful reading of the opinion, however, discloses that Chief Justice Jones, writing the opinion for the Dallas Court, uses the term, "value of the improvement placed on the premises," as being equivalent to the difference between the contract price and the amount necessary to complete the contract in accordance with its terms. This is apparent from a reading of the jury's findings, as set out in the opinion. The note was for $550. The jury found that "the reasonable and necessary cost of making the improvements comply with the plans and specifications was the sum of $250." The lien was held to be valid to the extent of $300, on authority of Harrop v. National Loan & Inv. Co., Tex.Civ.App., 204 S.W. 878. It may be that the entire provision relating to the extent of the lien in event of noncompletion of the work is not set out in the opinion, but it is certain that the judgment of the court did not override and disregard the agreement fixing the price to be paid. A purpose of destroying this contractual provision can not fairly be attributed to the learned Chief Justice, for we find him stating in Galbraith-Foxworth Lumber Co. v. long, Tex.Civ.App., 5 S.W.2d 162, that one of the essential rights of an owner contracting for the erection of the building is to have the building completed within the time, and at the cost agreed upon by the parties.

The Bell case seems to point up a fundamental distinction between two types of failure to substantially comply with a building contract. One type of failure is illustrated by Murphy v. Williams, 103 Tex. 155, 124 S.W. 900, 901, where "the work and material, so far as done and supplied, were in compliance with the contract." The other type of failure takes place when a building is constructed which is substantially different in character as well as value from that contracted for, that is, "the owner had contracted for one thing and another had been furnished." This type of failure is illustrated by Paschall v. Pioneer Savings & Loan Ass'n, 19 Tex. Civ.App. 102, 47 S.W. 98, which is com-

mented upon in Murphy v. Williams. The failure in the Bell case belonged to the first classification mentioned. Performance, so far as it went, was in accordance with contract, hence an estimate as to the cost of completing the contract could be made and thus, by an adjustment of charges and offsets, the owner could receive the building he contracted for at the price he contract to pay. The failure in the present case, however, was of the second type. The evidence supporting the findings above set out which we must credit, in view of the jury's action, shows that the failure of performance and the resulting impossibility of performance, short of rebuilding, lies in the unwarranted and unauthorized substitution of inferior and different materials for those called for by the plans and specifications which were made a part of the contract and agreed to by the parties. The judgment here does not rest upon a partial performance which was in accordance with the contract insofar as it went, but rather upon the bald and untenable proposition that appellants were by the contract obligated to accept and pay for such material and labor as the contractors might decide to furnish.

A judgment recognizing as valid and foreclosing the asserted lien against the homestead is wholly incompatible with the jury's findings. Courts are created for the purpose of enforcing contracts, if they be legal, and denying enforcement, if they be illegal, but they can not make contracts for parties. A man contracting for a modest cottage can not be made to pay for a mansion, because a judicial tribunal thinks it suitable for him, nor should a man be required to accept inferior and different materials and workmanship when he has contracted otherwise. The findings as to the value of the house actually constructed, as compared to the value had it been constructed in accordance with the contract, are immaterial to any issue in this case, Paschall v. Pioneer Savings & Loan Ass'n, 19 Tex.Civ.App. 102, 47 S.W. 98, except appellant's action for damages against Blank and Cude, concerning which no effi-

cient complaint is made in this Court. 3–A Tex.Jur. 363, Appeal and Error, § 286.

Under the findings of the jury and the undisputed facts, it appears that the portion of the judgment awarding I. and G. N. Wood and Coal Company a recovery against Joseph P. Magee, Jr., Wanda F. Magee, P. H. Blank and D. H. Cude, of $12,707.61, and attorney's fees in the sum of $1,077.95, together with interest thereon at the rate of six per cent per annum from December 19, 1952, should be affirmed and it is accordingly so ordered. In all other respects, the judgment appealed from is reversed and vacated. Judgment is here rendered decreeing the asserted materialman's and mechanic's lien and deed of trust lien against appellants' homestead to be void and of no effect. This action renders that portion of the decree of the court below awarding a reformation of the materialman's and mechanic's lien contract immaterial.

Affirmed in part, reversed and rendered in part.

W. O. MURRAY, Chief Justice (dissenting).

I do not concur in the opinion of the majority. Joseph P. Magee, Jr., and his wife, Wanda F. Magee, agreed in writing, in substance, that in any event the holder or holders of the indebtedness should have a valid and subsisting lien for the full amount of material and labor actually furnished in the construction of their home.

This written contract meets all the requirements of Article 16, Section 50, of the Texas Constitution and Art. 5460, Vernon's Ann.Civ.Stats., and should be enforced as written. 22 Tex.Jur., § 223, pp. 322, 323; North American Building & Loan Ass'n v. Bell, 88 S.W.2d 633.

Otherwise the Magees will receive a house, found by the jury to be worth $12,000, for which they cannot be required to pay one cent. This would clearly constitute unjust enrichment. I think the judgment of the trial court should be affirmed.