**C. W. MOORE, dba Tejas Company,
Appellant,**

v.

**V. R. WATTINGER COMPANY, Appellee.**

**No. 11989.**

Court of Civil Appeals of Texas,
Austin.

Feb. 14, 1973.

Dale E. Muller, Sloan & Muller, Austin,
for appellant.

Joseph Latting, J. Malcolm Robinson,
Hooper & Robinson, Austin, for appellee.

PHILLIPS, Chief Justice.

This is a contract suit between two
building contractors.[1] Under the terms of
the contract, appellant (plaintiff below)
was a subcontractor and appellee (defend-
ant below), in effect was the contractor.

1. This case has been before this Court once before and is reported in Tex.Civ.App., 475 S.W.
2d 327.

Through a series of events outlined below, appellant never completed the jobs in question and appellee himself furnished the work. Appellant brought suit for damages, both compensatory and exemplary, alleging breach of contract, tortious interference with his business and loss of business profits. Appellee denied those allegations and counterclaimed for damages alleging breach of contract. Trial was to the jury and on answers of the jury to issues submitted, the trial court granted judgment for appellee and declared that appellant take nothing. Appellant filed motions for judgment *non obstante veredicto* and for new trial, both of which were overruled by the court. It is from the adverse rulings on these motions that appellant perfects his appeal to this Court.

We affirm.

Appellant's first two points, briefed together, are the error of the court in not granting appellant's motion for judgment *non obstante veredicto* and appellant's motion for new trial and entering judgment for appellee based on the jury's answers to Special Issues Nos. 1 and 4 because the jury's answers are not supported by any evidence or by insufficient evidence or are against the great weight and preponderance of the evidence. We overrule these points.

Appellant's Issue No. 1 inquired of the jury whether during the early part of the year 1969, appellee conceived a plan to cause the financial collapse of appellant and his business, to which the jury answered "we do not". Special Issue No. 4 sought the fair market value of appellant's business on or about January 14, 1970, to which the jury answered "$0.00".

These were appellant's issues. In situations where a jury returns a negative answer to an issue upon which the proponent has the burden of proof, the jury's answer need not be supported by affirmative evidence. Therefore it avails the complaining party nothing to assert that a neg-

ative answer is without support in the evidence. Ross v. Sher, 483 S.W.2d 297 (Tex.Civ.App.1972, writ ref. n. r. e.); Smith v. Safeway Stores, 433 S.W.2d 217 (Tex.Civ.App.1968, writ ref. n. r. e.); Weiser v. Hampton, 445 S.W.2d 224 (Tex. Civ.App.1969, writ ref. n. r. e.). However, since appellant also contends that these answers were against the great weight and preponderance of the evidence, we have reviewed all the evidence.

We hold that there was ample evidence to sustain the answers to these issues. Appellee testified that he had no intention whatsoever to put appellant out of business and testified that he had paid appellant $95,000 in 1969 as further evidence of this fact. As to the value of appellant's business, the jury was free to believe appellee's accountant witness who testified that in his opinion appellant's business was worthless.

Appellant's points 3 and 4, briefed together, are to the effect that there was no evidence of, or insufficient evidence for, the jury's answers to Special Issues 7, 8, and 9, or that the answers were against the great weight and preponderance of the evidence. We overrule these points.

Under Special Issue No. 7, Special Issue No. 7 inquired whether appellant and his business "were not 97% complete in their work on the M.H.M.R. Central Office Building?", the jury answered "we do". In response to Special Issue No. 8 which inquired whether the jury found that appellant and his business were not proceeding with their work on the M.H. M.R. Central Office Building in such a way as to prevent unreasonable delay to the other contracts and trades on that building, the jury answered "we do". With respect to Special Issue No. 9, which inquired whether the jury found that appellant and his business were causing a material interference with other trades on the M.H.M.R. Central Office Building during the last part of December, 1969, and

the first two weeks of January, 1970, up to and including January 14, 1970, the jury answered "we do".

These were appellee's or defensive issues submitting its theory that appellant breached the contract. They were all answered in appellee's favor and we find ample evidence to support them. Appellee admits that there was no direct testimony as to the percentage of completion; however the jury did find that the reasonable cost of completing this particular job was $1,813.81 and, since the job was worth $56,235.28 (3% of which is $1,687.05) the jury had a basis for finding that the work was not 97% complete. In addition, testimony of the superintendents of the general contractors supports all of these findings clearly and unequivocally.

Appellant's points five and six are the no evidence, insufficient evidence and against the great weight and preponderance of the evidence points concerning the jury's answers to Special Issues 10 and 11. We overrule these points.

Special Issue No. 10 inquired what sum of money was the reasonable cost of furnishing necessary labor and material to complete the sheet metal work on the M.H.M.R. Central Office Building. The jury answered $1,813.81. Special Issue No. 11 inquired as to the sum of money to be the reasonable cost of furnishing necessary labor and material to complete the sheet metal work on the Johnson City Hospital. The jury answered $6,923.19.

Appellant admits that appellee should be able to recover his reasonable cost of completion and that this amount should rightfully be subtracted from the amount appellee made on the contract. But, according to the jury findings of the reasonable cost of completion, there was nothing left on the contracts and appellant received nothing. Consequently, appellant contends that the jury's answers were not supported by the evidence.

■ Appellant contends that the figures from which the jury found to be the reasonable cost came from appellee's testimony regarding what his actual cost was and from exhibits and certain "bills" which appellant asserts were hearsay, consequently, no evidence. We hold that there was sufficient evidence of the reasonable cost of completion. Admitting, for purposes of argument only, that the documents complained of were hearsay and inadmissible, they were not the only evidence. Appellee himself was an expert in the field. He testified not only as to what his actual cost was, but also as to whether that cost was reasonable. The jury believed this evidence.

Appellant's points seven and eight are his no evidence, insufficient evidence and against the great weight and preponderance of the evidence points in respect to the jury's answer to Special Issue No. 12 inquiring as to whether a properly submitted change order would have been approved as to various parts of the construction work at the Johnson City Hospital. This was asked as to diffuser changes, dining room duct work and delivery room duct work change. To each of these the jury answered "we do not". We overrule these points.

In the first place, the same rule applies here that applied under points 1 and 2 above. These were appellant's issues and he had the burden of securing favorable findings. He did not carry his burden. In the second place, the testimony of appellee amply supports the jury findings on this issue.

Appellant's points nine and ten are that there was no evidence, or insufficient evidence for the jury's answers to Special Issues 14 and 15, or that these answers are against the great weight and preponderance of the evidence. We overrule these points.

■ Special Issue No. 14 inquired as to whether the jury found that appellant in-

formed appellee before January 14, 1970, that he (appellant) would not be able to complete his contracts with Wattinger. To this the jury answered "we do". Special Issue No. 15 asked whether the jury found that appellee's attorney on January 15, 1970, requested appellant to finish contracts in force with appellee at that time. To this the jury answered "we do".

Appellant testified that he did not abandon the contract and that he was ready, willing and able to perform. Appellee testified that on January 6, 1970, appellant called appellee on the telephone and said he was abandoning the contract. This testimony was corroborated by another witness for appellee. There was no dispute as to appellee's request that appellant complete the work. The jury believed appellee, and we hold that there was sufficient evidence to uphold these findings.

Likewise, we overrule appellant's points numbered eleven and twelve which are his no evidence, insufficient evidence and against the great weight and preponderance of the evidence points with respect to Special Issue No. 16. In this special issue the jury was asked whether appellant agreed with appellee that he, appellant, would construct the additional duct work on the Oaks Unit of the Brown Schools for no payment in return for appellee's bookkeeping in connection with the change orders on the M.H.M.R. Central Office Building. To this the jury answered "we do".

Here again we had testimony pro and con relative to this agreement and the jury believed appellee.

Appellant's thirteenth point of error is that the trial court erred in entering judgment that appellant take nothing because the appellant was entitled to recover a pro-portionate share of the retainage and other amounts due appellant on the contracts, less appellee's reasonable costs to complete the contracts, as a matter of law. We overrule this point.

Appellant contends that the reasonable cost of completion does not cover the entire sum left by the retainage and the contract, and that, consequently, he is entitled to the difference. We cannot agree with this. As noted above, under the findings made by the jury, which we uphold, there was no such excess remaining in these contracts. The jury found that appellant had breached his contract, so appellant's formula for ascertaining damages does not apply. The rule is that a party breaching a contract may not be allowed to profit by his breach. Continental National Bank of Ft. Worth v. Conner, 147 Tex. 218, 214 S.W.2d 928 (1948); Paschall v. Pioneer Savings & Loan Co., 19 Tex. Civ.App. 102, 47 S.W. 98 (1858, writ ref.).

Appellant's point number 14, which we overrule, is that the court erred in entering judgment that appellant take nothing because it was stipulated by and between the parties that the appellant was entitled to $155.00 retainage for the Mental Health Mental Retardation contract. We overrule this point.

The appellee is entitled to offset this amount. 52 Tex.Jur.2d, p. 189, Setoff, Counterclaim and Cross Actions, Sec. 7. In any event, the $155 was included in the total retainage which, when aggregated, did not come up to the reasonable cost of completion as found by the jury.

We affirm the judgment of the trial court.

Affirmed.